CENTRAL VERMONT RAILWAY COMPANY *v.* STATE OF VERMONT,
AND TOWN OF HARTFORD.

January Term, 1909.

Present: ROWELL, C. J., MUNSON, WATSON, and HASELTON, JJ.

Opinion filed March 19, 1909.

*Statutes—Implied Repeal—Railroads—Grade Crossings—Aboli-*
*tion—Proceedings—Appeal—Proceedings After Remand—*
*Parties Interested.*

A statute will not be construed as repealing a former act on the same
subject, in the absence of express words to that effect, unless there
is such inconsistency between them that they cannot stand to-
gether, or unless the later act is intended to supersede the former
and comprise in itself the sole system of legislation on the subject.

No. 126, Acts 1906, creating a board of railroad commissioners with
powers of a court of record in the determination of the matters
over which it is given jurisdiction, and giving parties aggrieved
by any judgment of the board the right to appeal to the Supreme
Court, impliedly repeals so much of No. 125, Acts 1906, providing
for abolishing grade crossings by order of the board, as gives an
appeal to the court of chancery by a party aggrieved by an order
of the board in proceedings to eliminate grade crossings.

The provision of No. 126, Acts 1906, that nothing therein shall be con-
strued to affect any special provisions of law relating to anything
therein contained, refers only to special provisions of law relating
to the jurisdiction of the board, and not to such provisions relating
to procedure.

Where the Supreme Court, on appeal from an order of the railroad
commissioners directing railroads to make changes in a crossing
at their own expense, remanded the proceeding, with liberty to the
railroads to file with the board a petition for a modification of the
order, and directing the board to hear evidence in support thereof,
together with evidence, offered by the petitioning freeholders or
the railroads, as to the practicability of the construction ordered,
the railroads were entitled to file a joint petition, in the nature of
a cross-bill, alleging that the crossing was a public highway, and

praying that the State and the town be made to pay some of the expense of making the changes ordered.

The B. Railroad owned by long lease two-thirds of a passenger station that it used in common with the C. Railroad which owned the other third. The public could not go to nor from the station without crossing at grade several tracks of the C. Railroad, on which trains moved almost constantly. The board of railroad commissioners, on the petition of freeholders, required the C. Railroad to make changes in the crossing, and ordered by the agreement of the two railroad companies that the expense thereof should be borne by them equally. *Held*, that the B. Railroad had the right to be heard on the question whether the crossing was a public highway, so that the State and the town could be made chargeable with a part of the expense.

The board of railroad commissioners dismissed the petition of a railroad against the State and a town for the abolition of a highway grade crossing. Proceedings were pending before the board for changes in the crossing, and in such proceedings that railroad and another railroad had filed a joint petition, alleging that the crossing was a public highway crossing, so that the State and the town were liable for a part of the expenses incurred in making the changes. *Held*, that the Supreme Court, on appeal from the decree dismissing the petition, would reverse it, *pro forma*, so that the question raised by the petition and the joint petition could be determined together, and one decree entered settling the whole matter.

APPEAL to the Supreme Court for the county of Windsor from the final decree of the Board of Railroad Commissioners dismissing the petition of the Central Vermont Railway praying for the abolition of an alleged public highway grade crossing over the petitioner's tracks at White River Junction. Heard at January Term, 1909, on the petitioner's further petition praying that the case be remanded, with mandate that it be consolidated with a prior petition pending before said board.

*John Young, C. W. Witters* and *W. B. C. Stickney* for the petitioner.

It is no objection to the contemplated consolidation that the parties to the two petitions are not the same. *Biron* v. *Ed-*

*wards,* 77 Wis. 477; *Patterson* v. *Eakin,* 87 Va. 49; *Monroe* v. *Lewald,* 107 N. C. 655; *Wyatt* v. *Thompson,* 10 W. Va. 645; *Burnham* v. *Dalling,* 16 N. J. Eq. 310; *Lofland* v. *Coward,* 12 Heisk 546; *Russell* v. *Chicago Tr. & Sav. Bk.,* 139 Ill. 583; *Woodburn* v. *Woodburn,* 23 Ill. 289.

*James G. Harvey* and *Alexander Dunnett* for the defendants.

ROWELL, C. J. This is an appeal from the final decree of the board of railroad commissioners, dismissing the petition of the Railway Co. against the State and the town of Hartford, praying for the abolition of a highway grade crossing over the company's tracks at White River Junction, and the establishment of a highway and a footway for passengers in such manner as appeared to the board most conducive to the public welfare and safety, and for an apportionment of the expense of such changes as should be ordered, among the State, the town, and the railroad company, which also appealed from said decree to the court of chancery within and for the county of Windsor.

The case now comes on for hearing on the company's petition, dated January 8, 1909, praying that it be remanded, with a mandate that it be consolidated with a prior case now pending before the commissioners, instituted by John L. Bacon and others against the petitioner, the Boston & Maine Railroad Company, and the Woodstock Railroad Company, praying, among other things, for such changes in said crossing as will lessen the danger thereof to the public.

The town moves to dismiss the appeal for want of jurisdiction, claiming that the court of chancery is the appellate court in such cases, and not the Supreme Court. This depends upon whether the part of No. 125, Acts of 1906, that gives an appeal in such cases to the court of chancery within and for the county in which the crossing is located, is repealed by implication by No. 126, a later act of the same session, which gives an appeal to the Supreme Court in general language broad enough to include the case in hand.

No. 125, Acts of 1906, which constitutes chapter 194 of the Public Statutes, is entitled, "An act relating to railroad crossings," and provides a way for altering, changing, and removing highway grade crossing by order of the board of railroad commissioners on its own initiation, or the petition of the selectmen

of the town, or of the railroad company, and for the apportionment by the board in certain cases of the expense among the State, the town, and the railroad company, and for the taking of land necessary for the purposes of the act. Said act repeals all acts and parts of acts inconsistent therewith. Section six of the act provides that any person aggrieved by the order of the commissioners may appeal therefrom to the court of chancery within and for the county in which the highway or crossing is located, and that the court may hear the appeal and re-examine the question of the propriety and expediency of the order appealed from, either by itself or by reference to a commission appointed by it; and in case the order is not affirmed, may make any other order that it may deem proper and that might have been made by the railroad commissioners, and award costs; that such appeal shall supersede the order appealed from until the final order of the court, and that its final order may be enforced by attachment, mandamus, or otherwise as the court shall deem proper.

No. 126, Acts of 1906, which makes up chapter 196 of the Public Statutes, is entitled, "An Act to create a board of railroad commissioners and to define and regulate its powers and duties." It gives the board the powers of a court of record both at law and in equity in the determination and adjudication of all matters over which it is given jurisdiction. It may render judgments, make orders and decrees, and enforce the same by any suitable process issuable by courts of law and equity in this State. It is required to prescribe the forms, pleadings, procedure, and rules of practice before it, and to print the same for general use. It is required to hear all matters, and state its rulings when excepted to, and its findings of facts, which are given the force and effect of the reports of special masters in courts of equity and whenever the cause is taken by appeal to the Supreme Court. Parties aggrieved by the final order, judgment, or decree of the board, are given the right to take the case to the Supreme Court by appeal for the correction of any errors excepted to in its proceedings, or any in the form or substance of its orders, judgments, and decrees on the facts found and reported. Such appeals are to be taken, and the case entered in the Supreme Court in the county in which the case arises, in the manner, and under the law and rules of procedure, that govern such appeals from the court of chancery, and the Su-

preme Court is given the same power therein as it now has over appeals from the court of chancery. It may reverse or affirm the judgments, orders, and decrees of the board, and remand the cause to the board with such mandate as law or equity shall require, and the board shall enter judgment, order, or decree, in accordance with the mandate. Such appeal shall not vacate any judgment, order, nor decree of the board; but the Supreme Court, or a judge thereof when the Court is not in session, may suspend execution thereof as justice and equity shall require, unless otherwise specifically provided by law. Section 23 of said act gives said board jurisdiction on due notice to hear, determine, render judgment, and make orders and decrees, in all matters provided for in the charter of any railroad corporation or in the statutes of this State, and like jurisdiction in all matters respecting divers other subjects specifically mentioned, among which are "all highway grade crossings and signs, signals, gates, or flagmen at the same." It provides that nothing contained in the section shall be construed as affecting special provisions of law relating to anything therein contained. Chapter 172 of the Vermont Statutes, and all amendments thereto, and all acts and parts of acts inconsistent with said act, are thereby repealed. Said chapter of the Vermont Statutes is entitled, "Railroad Commissioners," and relates to their appointment and general powers and duties, and to the duties of persons and corporations operating railroads in this State.

A statute will not be construed as repealing a former act on the same subject, in the absence of express words to that effect, unless there is such an inconsistency between them that they cannot stand together, or unless the later act is evidently intended to supersede the former act in respect of the matter in hand, and to comprise in itself the sole and complete system of legislation on that subject. Passing, for the present at least, the question of inconsistency between these acts, we come to consider what the intention of the Legislature was in the respect indicated.

It was held in *Brown* v. *United States,* 171 U. S. 631, 19 Sup. Ct. 56, 43 L. ed. 312, that when a statute provides for a writ of error to a specified court of appeals, it must be considered as a repeal of any previous statute providing for a writ of error to another and a different court. That case was in error to the United States court in the Indian Territory, to review a

judgment thereof by which the plaintiff in error was convicted of a capital offence. A motion to dismiss was interposed by the Government for want of appellate jurisdiction. By an act of Congress passed March 1, 1889, a United States court was established for said Territory. It conferred no jurisdiction over felonies, but exclusive original jurisdiction over all other offences. By a later act of Congress, passed March 1, 1895, the jurisdiction of the territorial court was extended to capital cases and other infamous crimes, and a territorial court of appeals created, to which, it was provided, appeals and writs of error from the court in the districts should be prosecuted in criminal cases. An intermediate act of Congress, passed March 3, 1891, provided that appeals and writs of error might be taken from the decisions of the United States court in said Territory to the Supreme Court of the United States or to the Circuit Court of Appeals in the Eighth Circuit. The Court said that as, when this last mentioned act was passed, the territorial court had no jurisdiction of capital crimes, Congress did not, of course, contemplate any appeal or writ of error in such cases; but that when, by the act of March 1, 1895, the jurisdiction of the territorial court was extended to capital cases, and a territorial court of appeals established, with power to entertain appeals and writs of error, the act of March 3, 1891, could not be regarded as applicable to such cases.

That case is much in point here. When No. 125, Acts of 1906, was passed, the railroad commissioners had practically no power to enforce their orders. They had been enforced mostly, if at all, by the Supreme Court on appeal, exercising equity powers given for the purpose; and sometimes there was a punitive sanction for noncompliance. When said last mentioned act was passed, though considerable had been accomplished elsewhere in respect of legislative regulation and control of railroads, this State had never conferred sufficient authority upon the railroad commissioners to make them very effective in that regard; and No. 126, Acts of 1906, which, though passed after No. 125, took effect before it, seems to have been the first time the Legislature took the matter in hand with a view to remedy that shortage of authority by conferring enough more to enable the commissioners to deal with the matters within their jurisdiction more effectively and speedily than they had ever been able to do before. This is evidently why the board is given such

ample authority both to adjudge and to execute its judgments, equal in all respects to the authority of the court of chancery, and therefore there was no longer any need of resorting to that court for any purpose, and so the act that conferred that authority might well ignore, and evidently intended to ignore, that coordinate court altogether in appeals, and send the case directly to the Supreme Court on questions of law. This intention is strongly indicated by the provision that the facts found by the commissioners are given the force and effect of the reports of special masters, which are, by general statute, unless cause is shown, to be accepted by the court of chancery, and be conclusive of the facts in issue submitted for trial and determined.

In passing No. 126, the Legislature seems to have had a unified and comprehensive plan in mind, and evidently intended to provide a singleness of means to carry it into effect, for the act is broad enough to give appellate jurisdiction to the Supreme Court in all cases adjudged by the commissioners, regardless of the nature of the matter involved, and so the principle laid down in *Brown* v. *United States* is applicable, which is, in effect, that when a statute provides for taking a case to a specified court of appeals, it is to be considered as a repeal of any previous statute providing for taking it to another and a different court of appeals; and this, because such is to be regarded as the intention of the Legislature.

The provision in section 23 of No. 126, that nothing in the section shall be construed as affecting any special provisions of law relating to anything therein contained, does not prevent the application of that principle, for we construe that section to refer, not to special provisions of law relating to procedure, for there is nothing in it about procedure, save what is said as to the time and manner of summoning parties to appear and answer original petitions and complaints pending before the board; but to refer only to special provisions of law relating to the jurisdiction of the board, which is the sole subject of the section except as aforesaid, and the matter of appeal here involved does not relate to that jurisdiction. We hold, therefore, that No. 126, Acts of 1906, repeals by implication so much of No. 125, Acts of 1906, as relates to appeals to the court of chancery, for that such was evidently the intention of the Legislature.

It remains to consider whether the prayer of the petition to remand shall be granted to any and what extent. Said petition

sets out fully and at large all and singular the proceedings under the Bacon petition, as well as all and singular the subsequent proceedings concerning the subject-matter of that petition, down to the time it was itself brought, by which it appears that the Bacon petition, which initiated the proceedings, is a freeholders' petition, brought February 11, 1908, whereon divers hearings were had down to and including June 24th, when the Central Vermont and the Boston & Maine announced to the commissioners in open session that they had agreed if a subway was ordered, that the expense thereof apportioned to them should be borne one-half by each, also the cost of maintenance, lighting, and heating; that thereupon, at the same session, the board announced that it had decided to order a subway, gave a general outline of it, and said that a formal order would be issued as soon as the engineers could work out the details; that on the 30th of June the original petition in this case was brought, which was heard the 6th of August, and dismissed the 10th of September; that on the 15th of September a formal order was filed in the Bacon case, from which the Central Vermont and the Boston & Maine appealed to the Supreme Court, where such proceedings were had that on the 27th of October the case was remanded for further proceedings, with liberty to the appellants or either of them to file with the commissioners a petition for a modification of said order, and directions to the commissioners to hear evidence in support thereof, and such evidence as might be offered by any party in reference to the practicability of the construction ordered and appealed from, the expense of the same, and the expense of other plans proposed; and after such further hearing, to make such modifications and alterations of, additions to, or omissions from, said order, if any, as seemed to them just and proper; and to report the advantages and disadvantages of each plan proposed for eliminating said grade crossing; the probable cost of the work ordered and of each plan proposed; the advantages and disadvantages of the elevator system ordered, and the annual cost of operating the elevator, and the objections, if any, to the plan for an underpass proposed by the Boston & Maine. Said mandate provides that nothing therein shall be considered as in any respect limiting the jurisdiction of the commissioners.

It further appears that on the 24th of December the Central Vermont and the Boston & Maine filed with the commissioners pursuant to said mandate their joint petition of that date, rep-

resenting that there was a public highway crossing from the passenger station at White River Junction, westerly over the tracks of the Central Vermont at grade to the main street in said village, which said crossing was dangerous to the travelling public and ought to be abolished in accordance with a plan and specifications therewith submitted, and the expense thereof apportioned among the State, the town of Hartford, and the petitioners; and praying that the Attorney General of the State, the town of Hartford, and the Bacon petitioners, be notified of a time and place of hearing, and that the commissioners would order an underpass and a footway to be constructed in accordance with said plan and specifications, and apportion the expense thereof as aforesaid according to the statute in such case made and provided. It further appears that a hearing was had on said petition on January 7, 1909, all parties appearing, including the Attorney General and the town of Hartford, when the Central Vermont and the Boston & Maine, the petitioners therein, offered testimony tending to show that the approach to said station over said tracks at grade was at the time of making said order in the Bacon case, a public highway, but that the commissioners refused to hear said testimony, and excluded the same, on the ground that the question sought to be made thereby did not arise under the Bacon petition and was not relevant thereto; whereupon, without further action by the commissioners, the matter was continued at the request of the petitioners till February 2, 1909, that the petitioners might have time to apply to this Court to remand this case, and to the court of chancery to remand the appeal thereof taken to that court.

In this connection it is well to see just what the Bacon petition is. It is brought under P. S. 4610, which authorizes any ten freeholders of the county in which the matter complained of arises and over which the railroad commissioners have jurisdiction, to bring before the commissioners by petition, among other things, any matter wherein and whereby they claim that the public safety is endangered. The original petition in that case called to the attention of the commissioners the conditions, believed by the petitioners to endanger the public safety, existing at the approaches from Main and Depot streets to the union passenger station in White River Junction, and requested a hearing on the matter, to include also the sufficiency of said station in respect of the convenience and accommodation of the

public. The amended petition set forth that the only approach and crossing to said station is at grade over many tracks used for shunting and yarding cars, so that by reason of the almost constant use thereof for that purpose the crossing there by persons and teams is a very great source of inconvenience and danger to patrons of the railroads and the public who do business there.

Now although the Bacon petition does not itself raise the question whether said crossing is a public highway, yet the joint petition of the railroad companies properly raises it, for it grows out of the subject-matter of the Bacon petition, and so is relevant thereto, and its determination is necessary to a complete disposition of the matters in litigation therein. Said joint petition, therefore, in this respect, as well as in all other respects, is well within said mandate, and on this question is like a cross-bill in chancery for affirmative relief, which must be based on an equity growing out of the claim set up in the original bill, and is merely a dependency of that bill.

It is to be noted that the Boston & Maine is not a party to this proceeding, and therefore is not bound by the decree herein. It has not yet been heard on the question whether said crossing is a public highway, so that the State and the town can be made to pay some of the expense of making the changes ordered, though it is directly interested therein; for although it neither owns nor operates the Central Vermont Railroad, yet it is found in the Bacon report that it owns by long lease two-thirds of said passenger station and the Central Vermont the other third; that it controls the land on which the freight station is located, a separate portion of which is devoted to its exclusive use, and separate portions to the like use of the Central Vermont and the Woodstock road; that the Boston & Maine and the Central Vermont use their tracks in common as far as necessary in discharging passengers and transferring passenger cars and freight cars from one road to the other in doing their several business at said station; but that they are so related to the business there, and have such a common interest therein, that their interests and duty in affording the public safe and convenient ingress and egress over said railroad property to and from the passenger station as now located, are substantially joint and equal; that neither teams nor pedestrians can go from the village of White River Junction, nor from the surrounding country, to said sta-

tion, nor from said station to the village nor to the surrounding country, without crossing at grade the eight tracks of the Central Vermont, on which trains are moving almost constantly day and night, and which are wholly unguarded and without protectives of any kind; that several hundreds of persons are thus compelled to cross said tracks daily, and that owing to the increasing amount of business done thereat, the number of persons thus crossing said tracks is also increasing, and includes both sexes and all ages and conditions. And although the Central Vermont is the one required by the Bacon report to make the changes therein ordered, yet the expense thereof is thereby imposed upon the Boston & Maine and the Central Vermont jointly and equally.

Such being the rights, interests, and liabilities of the Boston & Maine, and such its use and operation of the tracks over which said crossing passes, and its duties in respect of said crossing, it has a right to be heard in the Bacon case on the question whether there is or not a highway over the same. But we can make no mandatory order to that effect, for that case is not before us. And as the Central Vermont is interested in that question jointly and equally with the Boston & Maine, it ought to participate in that hearing, lest injustice be done, and it would be anomalous and exceptional if it could not; and as the decree in this case is not vacated by the appeal, and might possibly embarrass it in this behalf, we think best to reverse it *pro forma,* and send the case back, that all parties interested in that question may, as the commissioners' rules happily phrase it, have full "liberty of approach," and the whole matter be settled in one decree, as it is all one case. But no order of consolidation is necessary, even though we have power to make one, for the question is embraced in the joint petition referred to.

*Decree reversed pro forma and cause remanded.*