J. L. BACON ET AL. *v.* BOSTON & MAINE RAILROAD ET AL.
CENTRAL VERMONT RAILWAY COMPANY *v.* TOWN OF HARTFORD
ET AL.

Special Term, August, 1910.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, and POWERS, JJ.

Opinion filed October 6, 1910.

*Railroads—Grade Crossings—Elimination—Powers and Juris-*
*diction of Public Service Commission—Appeal—Jurisdiction*
*of Supreme Court—Stated Reasons for Commission's Ac-*
*tion—Sufficiency—Construction of Report—"Adjacent."*

In a proceeding to eliminate a grade crossing, the Public Service Commission sufficiently stated its reasons for rejecting a plan of elimination proposed by the railroads by reporting that it was the same plan, with designated modifications, that was described and rejected in a former report in the same case, for reasons there stated, and that the modifications, though improvements, still left the plan subject to most of the criticism made in the earlier report.

In a proceeding to eliminate a grade crossing constituting the approach to a passenger station, the Public Service Commissioners did not inadequately deal with the situation, or transgress the bounds of the authority committed to them, by rejecting the railroad plan providing for a subway for teams and pedestrians, and ordering a

subway for pedestrians only, and prohibiting "general public travel" across the tracks.

On appeal from an order of the Public Service Commission the Supreme Court sits only for the correction of errors in the rulings of the Commission which are duly excepted to, or of errors appearing from the facts found and reported by the Commission.

The natural and primary meaning of "adjacent" is near to, neighboring, and should be read "adjoining" only where the context or subject-matter requires that reading; and so an order of the Public Service Commission to eliminate a grade crossing, constituting the approach to a passenger station, by the construction of a subway for pedestrians, and a baggage house and platform west of the railway tracks and north of the subway and "adjacent" to its western entrance, does not require the baggage house and platform to be constructed along and adjoining the most westerly track, but leaves their definite location to the determination of the railroad company.

On review the Supreme Court, of its own motion or upon the suggestion of counsel, will take notice of former proceedings in that Court in the same case.

APPEAL by the Central Vermont Railway Company only from an order of the Public Service Commission, dated June 25, 1910, providing for the construction of a subway as an approach to the passenger station at White River Junction. The order was made upon due hearing after the decision in this case reported *ante* page 421. The opinion fully states the case.

*C. W. Witters* and *H. Henry Powers* for the appellant.

*James G. Harvey* for the petitioners.

HASELTON, J.   The nature of these cases, which are treated as one cause, is fully stated in the opinion therein already filed. See 83 Vt. 421. The history, too, of the cases down to the May Term, 1910, of this Court, when the opinion referred to was filed, is therein sufficiently traced. That opinion is to be read as a part of this.

After the decision at the May Term was rendered, on due notice to all parties, the Public Service Commission held a further

34

hearing in the cause and made a further report, decision and order, dated June 25, 1910, and filed July 1, 1910, from which the Central Vermont Railway Company appealed. The order of the commission which we have now to consider relates in part to the enlargement and reconstruction of the platform appurtenant to the passenger station at White River Junction, and in part to the interior arrangement and finish of such station. To the order in these respects the appealing party makes no objection.

The order also provides for the construction for the use of pedestrians of a subway extending under all of the railway tracks west of the station, they being the eight tracks referred to in the former opinion. 83 Vt. 421. The order further provides that there shall be constructed to the west of the railway tracks, north of the subway, and adjacent to its western entrance a baggage house and platform adequate to receive, deliver, and care for baggage on the west side of the tracks, and that there shall be made, as an approach to the same, a graveled driveway connecting a street called Main Street in the former opinion with a street, running easterly therefrom and nearly at right angles thereto, called the street by the National Bank. The contemplated driveway is short and lies upon land already held by the Central Vermont. The order further provides for the construction and maintenance of fences of such quality and location as to prevent "general public travel" over the tracks at grade to and from the station. The appellant challenges the right and authority of the Public Service Commission to order the subway and the westerly baggage house and platform which it has ordered as above stated.

The first claim of the appellant is that, in dealing with the dangerous situation at White River Junction, it was the duty of the commission to adopt a plan jointly proposed by the Central Vermont Railway Company and the Boston & Maine Railroad. This plan contemplates an underground driveway for teams as well as an underpass for foot-passengers. In its main features it is one of the plans referred to in this cause, 83 Vt. 421, 441, as having been discussed in the report of the commissioners filed next before the one now under consideration. In such former report the commissioners stated their reasons for not adopting the joint railroad plan then before them. These reasons were not

frivolous. One was that the plan provided for an abrupt turn in the underground driveway making it inconvenient and dangerous for teams going in opposite directions. Another reason given by the commissioners was that the grade at each end of the driveway was undesirable. Another reason was based on the small amount of platform space about the station provided by the plan, or that could be provided by any feasible plan, in view of the location of the station itself on a small piece of land enclosed on all sides by the tracks of the various railroads centering at this important junction. In discussing this plan the commissioners in their penultimate report say that one of the railroad engineers and one of the railroad officials testified, in substance, that no prudent person would take the risk of driving an average horse through the passage-way; and the finding of the commissioners was in accordance with such testimony. The joint railroad plan as presented to the commissioners at their last hearing was modified in some respects which are fully set out in the last report of the commissioners. Of this modified plan the commissioners say that although the proposed changes are manifest improvements they still leave the plan subject to most of the criticism made upon it in their earlier report, and that public safety and convenience require the rejection of the solution of the difficulty so offered. The appellant claims that in thus dismissing the matter the commissioners give no reason for their rejection of the joint railroad plan. But their reasons could have been given in no way more satisfactory to the court. We are enabled to compare the features of the plan as originally submitted, the criticisms upon it by the commissioners, the modifications suggested, and to see for ourselves that most of the objections made by the commissioners to the original plan have not been obviated. It is urged that, as under the plan which the commissioners have ordered to be carried out, baggage, mail bags, express matter and goods going to and from the station, must still be carried across the tracks at grade, therefore the order of the commission deals inadequately with the situation, that the safety of the employees of the road is not safeguarded, that in consequence of this traffic the trains of the road will necessarily be delayed more or less and will be exposed to derailment from collision. It is an obvious and conceded fact that the commissioners' plan obviates so far as any plan can the danger

to passengers on foot. And since it puts a stop to the "general public travel" over the tracks, which has formerly prevailed, it certainly will greatly aid the management of the roads in seeing that baggage, mail bags, express matter and other things necessary to be taken to and from the station are got across the tracks without danger to the railroad employees or others and without danger of collision with trains. In compelling the prohibition of "general public travel" across the tracks, and such travel only, the commissioners have left the railroad authorities free to arrange the matter of transportation across the tracks in a manner to suit the convenience and safety both of the patrons of the roads and the railroad employees. No ground has been suggested, and none occurs to us for saying that the commissioners transgressed the bounds of the authority committed to them in rejecting the joint railroad plan and in limiting the provision for a subway to an underpass for foot-passengers only.

The appellant makes a second objection to the order now under consideration; and that is that it destroys, or renders inadequate, the "team track" at White River Junction. By this is meant the track farthest west, and the claim is that it is absolutely necessary to place and keep cars thereon, and for teams to stand alongside thereof when freight is received or unloaded in the course of the transactions of the appellant company with its patrons doing business at White River Junction. More specifically the claim is that this most westerly track would be rendered practically useless by the construction on the west side of the tracks of the baggage house and platform ordered to be there constructed. When the question was before this Court of whether, in relieving the dangerous situation at White River Junction by the construction of an underpass, the commissioners could compel the elimination of the four westerly tracks of the Central Vermont Railway Company and an almost complete revision of its tracks at that terminal point, we held that an order to that effect could not be made as an incident to the construction of an underpass unless it was a necessary incident thereto. And we held that on the facts reported it appeared that those radical changes were not a necessary incident to the construction of an underpass. Accordingly the commissioners have made an order which eliminates none of the eight tracks, but extends the underpass under them all. The appellant now claims that the prin-

ciple before announced still applies and operates because of the effect which it is claimed the order now under consideration would, when carried out, have upon the usefulness of the team track, so called. The report contains no findings in respect to this matter. No findings in respect thereto were requested. The appellant did, indeed, file requests for the report of all the evidence bearing upon certain designated matters; and several of these requests related to the evidence regarding this team track, its use, convenience, and necessity, and the extent to which its availability would be impaired by the construction of the proposed baggage house and platform on the west side of the tracks. From the nature of these requests and from what appears in the brief of the appellant it would seem that it was contemplated that this Court should make findings of fact and act as a tribunal substituted for the Public Service Commission by virtue of the appeal. But this Court cannot so act. *Bacon* v. *B. & M. Railroad,* 83 Vt. 421, 457; *C. V. Ry. Co.* v. *State,* 82 Vt. 145, 149; P. S. 4598, 4599, 4600, Acts of 1908, No. 116, §§ 1, 12.

The Public Service Commission is by law required to state all of its rulings that are excepted to and its finding of facts, and a case determined by the commission comes to this Court for the correction of any error so shown or of any error appearing from the facts found and reported by the commission. There is no propriety in requesting evidence to be reported to this Court except when it is necessary to the presentation of questions of law properly raised and before the Court. The law of procedure applicable is that which governs appeals from the court of chancery. P. S. 4600; *Randall* v. *Randall,* 55 Vt. 214; *Sargent* v. *French,* 54 Vt. 385.

In response to the requests above referred to the commissioners report that no stenographer was employed to make a verbatim report of the testimony at the hearing, but that the clerk of the commission took minutes which contain the substance of the testimony only. From these minutes they comply with the requests except as hereinafter noted; and, since there was a suggestion in the argument for the appellant that, at all events, the case ought to be remanded for findings in respect to the matter of the team track, we herein notice the requests relative to evidence in that regard and the responses thereto. The appellant requested

the board to report all evidence tending to show the present and prospective use of the team track, the number of cars that the present business requires to be placed upon such track, and the lack of any other suitable place at White River Junction for a team track. The commissioners report that the general manager of the Central Vermont Railway testified in substance that the team track "has a capacity of five cars, that six days in the week this track is needed for the full five car lengths, that often there is a rush order of freight for local shippers which cannot be placed, that a team track for ten or twelve cars is needed at White River Junction, and that the business is constantly increasing." The commissioners report that Mr. J. G. Harvey, of White River Junction, testified that the team track is in plain sight from his office window, that he sees it plainly every day, and "that he seldom has ever seen more than one or two cars on this track being loaded and unloaded at the same time." The commissioners further report that the general manager and the superintendent of structures of the road testified in substance that there was no other location where a team track could be conveniently located in substitution for the present one. We note that it appears from the answers to the questions of the appellant that the agent of the American Express Company at White River Junction, the station agent there, one of the proprietors of the Junction House, opposite the station, and two other business men at White River Junction, having much business at the station, were witnesses at the hearing and that none of them testified as to the occupation of the team track so-called by cars. As to its actual occupation the only witness was Mr. Harvey. The general manager of the road testified to present and prospective needs but did not not undertake to testify as to the actual occupation of the team track by cars and doubtless could not have done so except as matter of hearsay. If the point now made was seriously contested before the commissioners it is difficult to understand why the station agent, at least, was not called on to give testimony regarding it.

The appellant also requested the commissioners to report all evidence tending to show the amount of track that would remain available as a team track provided the baggage room and platform ordered by the commissioners should be constructed "along and adjoining" the team track, and all the evidence tending to show

the number of cars that could be placed upon the team track after the construction of the proposed baggage room and platform. With these requests the commissioners say that they are unable to comply for the reason that their order does not specify the length of the baggage room and baggage platform ordered to be constructed on the westerly side of the tracks. These requests indicate some misapprehension, or inadvertence, as to the terms of the order. The order does not require the baggage room and platform to be constructed "along and adjoining" the team track. The counsel for the petitioners in the Bacon case correctly apprehends the force of the order when, in his brief, he says in substance that the definite location of the baggage house and platform is left to the determination of the appellant. The natural and primary meaning of the word "adjacent" is near to, neighboring. "Objects are adjacent when they lie close to each other * * * they are adjoining when they meet." Webster's New Intern. Dict. "Adjacent" is read "adjoining" only when the subject-matter, or the context, requires such reading. *United States* v. *St. Anthony R. Co.*, 192 U. S. 524; *Hennessy* v. *County*, 99 Wis. 129, 74 N. W. 983; *Carrier* v. *Turnpike Road*, 18 Johnson, 56; *Close* v. *Twibell*, (Ind., July, 1910), 92 N. E. 377.

It appears from the cases and from the usage of good writers and speakers that the word "adjacent" in conveying the idea of nearness indicates no fixed or uniform distance, no more than does the phrase "a piece of stone" indicate anything definite as to size. It seems unnecessary to say that "near" does not mean "next." In one of the cases above referred to, a place was thought to be adjacent to another though two feet intervened, in another, though the places were a half mile apart, and in another it was said that tracts of land two miles apart would probably be considered adjacent. The word "adjacent" is proportionate or relative in its meaning, and the necessity and convenience of the situation to which it applies must not be overlooked in determining its latitude. Here the baggage room with its platform is to be westerly of the tracks and northerly from the entrance to the underpass, and so placed that the driveway already referred to will serve as an approach to the baggage house, but the course of the driveway and its termini are not fixed further than has been shown. The approach to the baggage room from the sides not facing the tracks is the matter which concerns the public.

Whether the baggage room or its platform shall be a few feet more or less from the tracks touches only the convenience of the railroad company in taking baggage to and from the baggage house and across the tracks. It is perfectly obvious that the commissioners could not reply to the question as to the extent of team track that would be available as such after the construction of the baggage house with an appurtenant platform. To have done so would have been to direct by implication the size, location and shape of the structure, matters which the order leaves to the railroad management.

In answer to requests for all the testimony in respect to the amount of baggage taken across the tracks daily the commissioners report the testimony of the station agent and one of the proprietors of the Junction House. Mr. Wheeler, the proprietor referred to, testified in substance that twenty or twenty-five trunks are taken across the tracks either to or from the station each day and that in addition to these many small pieces of baggage are taken across the tracks on trucks.

The station agent testified in substance that the local job teamster hauls trunks across the tracks and that the Junction House trucks deliver trunks across the tracks to or from every train, that this would be on an average of five or six times a day, that baggage is a small part of the traffic across the tracks, and that teams from the country very seldom cross the tracks but deliver both their baggage and their passengers on the west side of the tracks. So the testimony set out at the request of the appellant tends to show that no very spacious structure is required to house the trunks which, at any one time, are likely to be on the west side of the tracks, and that some structure ought now to be there to house the trunks which, as the station agent testifies, are now left there. There is no reason to suppose from anything that has in any way been brought to our attention that there cannot be constructed a baggage room and platform adequate to the requirements of the situation, and of the commissioners' order, without serious interference with the use of the team track as such. It has been the duty of the commissioners to relieve a situation demonstrated and confessed to be highly dangerous. It should be the part of the appellant not to magnify slight inconveniences but to surmount them. If the manager of the Central Vermont is correct in his judgment that the team track at White

River Junction, as it now is, has a capacity for five cars only, and that a team track with a capacity for ten or twelve cars is needed, then there is a difficulty presented which requires solution, but that difficulty cannot be attributed to the Public Service Commission.

We have throughout taken notice of the former proceedings in this Court in this case.  Counsel upon both sides have proceeded upon the theory that we would do so.  Such a course a court will take either upon the suggestion of counsel or upon its own motion.  *Dewey* v. *St. Albans Trust Co.,* 60 Vt. 1, 6 Am. St. Rep. 84, 12 Atl. 224; *Wilson* v. *Calculagraph Co.,* 153 Fed. 961; *Hancock* v. *Diamond Plate Glass Co.,* 37 Ind. App. 351, 75 N. E. 659.

In oral argument a suggestion was dropped to the effect that the order of the Public Service Commission is outside the scope of the Bacon petition.  It appears, however, to be well within it.

There is no ground for reversing the judgment and order of the Public Service Commission nor for taking the exceptional course of recommitting the report for further findings.

*Judgment and order affirmed and cause remanded.  As the order is dated June 25, 1910, and as the intervening time has been required for the presentation and decision of the questions raised on this final appeal, the Public Service Commission is at liberty to fix a new time for the completion of the work by their order directed.*

WATSON and POWERS, JJ., concur in the legal conclusions reached, but dissent on the question of the present disposition of the case.  Believing that it sufficiently appears from the record that a compliance with the order of the Commission will probably interfere with a material portion of the so-called Team Track, they would, in view of the importance of the matter and in the interests of fairness to the petitionees, (who are entitled to sufficient findings to raise their legal questions), remand the case for further findings relative to this feature of it—since counsel request it—as was recently done with *Scoville* v. *Brock,* 79 Vt. 449 —though counsel did *not* request it.