CENTRAL VERMONT RY. CO. v. REDMOND et al., Public Service
Commission.

(Circuit Court, D. Vermont. August 1. 1911.)

1. STATES (§ 67*)—PUBLIC SERVICE COMMISSION—"COURT."
     The Public Service Commission of Vermont is not a court.
     [Ed. Note.—For other cases, see States, Dec. Dig. § 67.*
     For other definitions, see Words and Phrases, vol. 2, pp. 1672–1682; vol.
8, p. 7622.]

2. COURTS (§ 508*)—INSTRUCTIONS—PUBLIC SERVICE COMMISSION—ORDERS—
     APPEAL JUDGMENT—INJUNCTION BY FEDERAL COURT.
     P. S. Vt. 4599, as amended by Laws 1908, No. 116, provides that any
person, feeling himself aggrieved by a final order of the Public Service
Commission, may appeal to the Supreme Court on the facts found and
reported by the Commission. Section 4600 gives the Supreme Court the
same power therein as over appeals from the court of chancery, and per-
mits the court to reverse or affirm the judgments or orders, or remand
the cause with such mandates as law and equity shall require, and
requires the board to enter judgments in accordance with such mandates.
Held that, where an order of the Public Service Commission requiring
certain changes in railroad tracks, depots, and crossings at a specified
point was appealed by the railroad company to the Supreme Court, where
the order was affirmed and the proceeding remanded with directions to
extend the time for the performance of the order, the proceedings in the
state court were not terminated by the remand prior to the order being
carried into effect, and hence the federal court within the district had no
jurisdiction to enjoin the Commission from compelling the railroad com-
pany to comply with the order under Rev. St. § 720 (U. S. Comp. St. 1901.
p. 581), providing that an injunction shall not be granted by any court
of the United States to stay proceedings in any court of the state except
in proceedings relating to bankruptcy.
     [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1418–1430; Dec.
Dig. § 508.*
     Enjoining proceedings in state courts, see notes to Garner v. Second
Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A.
575; Copeland v. Bruning, 63 C. C. A. 437.]

In Equity. Bill by the Central Vermont Railway Company against
John W. Redmond and others constituting the Public Service Com-
mission of Vermont. On petition for an injunction restraining the
enforcement of an order relating to changes in complainant's tracks,
crossings, etc., at White River Junction. Denied.

C. W. Witters and Young & Young, for petitioner.
John G. Sargent, Atty. Gen., for petitionees.

MARTIN, District Judge. The Central Vermont Railway Com-
pany, a corporation chartered and organized under the laws of the
state of Vermont, and having its principal office in the city of St.
Albans, in said state and district of Vermont, brings this petition
against the Public Service Commission of the state of Vermont, and
alleges, in substance, that it forms a part of a continuous line of
railroad from St. Johns, in the province of Quebec, through White
River Junction, in the county of Windsor and state of Vermont, to
the city of Boston, and also southerly from said junction to New

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

London, in the state of Connecticut, and is engaged as a common carrier in the transportation of passengers and property over said line, and has been a part of said line and so engaged for more than 10 years last past, and avers that the petitionees, constituting the Public Service Commission of said state of Vermont, upon a petition duly brought before said Commission by Bacon et als., under and by virtue of the laws of the state of Vermont, after hearing the parties thereto, and in that connection hearing all motions, amended petitions, pleadings, appeals to the Supreme Court for the state of Vermont (being the court of last resort within and for the state), ordered certain changes in and about the depot and railway yards at said White River Junction, which, if enforced, will seriously delay and embarrass the interstate business conducted by the petitioner, and prays this court to restrain the execution of said order. The matters especially complained of in said order are the widening and lengthening of the depot platform, the proposed construction of a subway under the tracks of the petitioner, and the construction and proposed location of a building for baggage and express whereby the "team track," so called, will be totally abolished, or, at least, seriously interfered with. Said "team track" is used for loading and unloading frieght by team. The petitioner avers that the western end of said proposed subway is within four feet of said team track and will seriously interfere with its use, and that there is no other location at White River Junction where another track can conveniently be laid for the loading and unloading of freight by team.

The original petition of Bacon et als. to the petitionees, as public officers of the state, has thrice been before the Supreme Court of the state upon appeal, in which the Central Vermont Railway Company was appellant. The evidence, petition, plans, pleading, and all other records of the proceedings before the Publice Service Commission and the Supreme Court are referred to and made a part of this petition. The last hearing before the Supreme Court terminated with the following order from that Court:

"Judgment and order affirmed, and cause remanded. As the order is dated June 25, 1910, and the intervening time has been required for the presentation and decision of the questions raised on this final appeal, the Public Service Commission is at liberty to fix a new time for the completion of the work by their order directed."

The case, as it stands in this court, rests upon that judgment. By the terms of that judgment the case is remanded to the Public Service Commission to extend the time for the performance of their order by the petitioner, as may seem meet. It is not remanded for further hearing upon its merits. It is a judgment of the court of last resort that the petitioner comply with the orders of the Public Service Commission. It is a proceeding taken into court on appeal by the petitioner. Nothing remains to be done but to perform the orders of the Commission as affirmed by said court.

[1] It was claimed on hearing before this court that the case is not now pending in the state court, but is entirely in the hands of a statutory commission, which is not a court. I concur in the con-

tention that the Public Service Commission is not a court. Miss. Railroad Commission v. Illinois Railroad Co., 203 U. S. 335, 27 Sup. Ct. 90, 51 L. Ed. 209. That case, however, does not apply to the case at bar, for it never was in the state court, or any court except the federal court. When the Public Service Commission of Vermont made its original order, the petitioner, the Central Vermont Railway Company, had its election to apply to the federal court for relief, on the grounds upon which this petition is based, or appeal, under the statute of Vermont, to the Supreme Court of Vermont. Can it do both? The history of this case, as it seems to me, clearly answers that question, both in justice and law. The petitioner, the Central Vermont Railway Company, filed a cross-petition, in it alleging that there was a public highway, maintained by the Town of Hartford, extending from one of its villages across the tracks of the petitioner's railway yard to the depot; that said crossing was dangerous to the traveling public and ought to be abolished in accordance with plans and specifications therein submitted, and, under the statute of Vermont, the expense should be apportioned among the state, the town of Hartford, the Boston & Maine Railroad Company, and the petitioners, but the Public Service Commission refused to hear testimony on said cross-petition on the ground that the question sought to be made thereby did not arise under the original petition of Bacon et als. Thereupon the petitioner, the Central Vermont Railway Company, appealed to the Supreme Court, which appeal was heard, duly considered, and the order of the Commission therein was reversed on the ground that it was in the nature of a cross-bill in equity, and the court directed that it be heard by the Commission on its merits. C. V. R. Co. v. State, 82 Vt. 145, 72 Atl. 324. The Commission followed the mandate of the court, and, after full hearing, held that said crossing never was a public highway, and directed that its original order be complied with. From this finding of the Commission this petitioner, the Central Vermont Railway Company, again appealed to the Supreme Court, first, upon the ground that the Commission erred in holding that the facts proved did not show that the claimed highway had been established by the town of Hartford; and, second, that the order of the said Commission in the premises was ultra vires.

[2] Every question presented to this court was presented to and considered by the state Supreme Court, including the contest as to the highway. Judge Haselton, for the court, in a very learned, and carefully prepared opinion of 33 pages, beginning on page 425 of 83 Vt., page 130 of 76 Atl., disposes of both questions. As to the first point raised by the appeal, to wit, the finding by the Commission that there was no public highway at the place in question, the court affirmed the action of the Commission; but upon the last point, this petitioner, the appellant in that case, prevailed. Judge Haselton, speaking for the court, said in part as follows:

"In view of the subordinate findings of the commissioners, all of the facts reported, and the plans referred to as authentic and correct, it is obvious that an underpass which will subserve the public safety and convenience can be constructed without involving as an incidental feature thereof the radical changes upon the surface of the right of way which the order requires. That

being so the order in that regard cannot be upheld, for the power of the commissioners in respect to railroad corporations is that of supervision and regulation and not that of management and administration.

"Management and administration are inseparable from liabilities, risks and responsibilities which attend the exercise of the franchises under which the roads exist. To demand of railroad companies the surrender of the right to manage and administer their affairs would be to demand a surrender of the beneficial use of their property and franchises. Our statute in a large and effective sense gives to the commissioners the right of regulation and supervision of the management by railroad companies of the quasi-public business in which they are engaged; but regulation on the one part and management on the other work together in a salutary way to subserve the public welfare. Without proper regulation the interests of the public at large have been and will be lost sight of. With regulation, obtruding itself into the place of management, capital will recede from the channels of public service, and the industries most useful to the people at large will dwindle, for the incentives to the development, extension and skillful operation of those branches of business which can be said to be 'affected with a public interest' will, in great measure, be removed. The phrase 'affected with a public interest,' as applied to public service enterprises which are private in their ownership, seems to be a rather happy phrase, used, and apparently invented, by Sir Matthew Hale; and its felicity consists in the fact that it lays no undue emphasis either upon the private character or the public purposes of such enterprises.

"The statute gives the Public Service Commission jurisdiction in all matters 'respecting' railroad crossings, highway grade crossings, signs, signals, gates, flagmen, the location, sufficiency and maintenance of proper depots or stations, the construction and maintenance of proper fences, cattle guards and farm crossings, the maintenance of tracks, frogs, switches, culverts and bridges, the connections between connecting roads, the manner of operating railroads. And the statute gives the commission jurisdiction in respect to other matters not above referred to."

The learned judge then discussed the leading cases in the state and federal courts, especially the Supreme Court of the United States, upon the questions involved in the second ground of appeal, and sustained the appeal. The order of the court in the premises was in this language:

"As the crossing is not a public highway, the ruling, or virtual ruling, of the commissioners that the whole expense of the requisite underpass and other changes to be ordered is to be apportioned between the railroad companies is affirmed. The manner in which the expense falling upon them shall be apportioned between them appears to have been agreed upon. The explicit order as to what changes shall be made is reversed and the cause is remanded that the whole matter may be worked out and decreed upon in harmony with the views herein expressed. With the duty resting upon the railroad companies to promptly remedy a confessedly dangerous situation, and with the duty resting upon the Public Service Commission to finally exercise, as soon as may be, its remedial jurisdiction which has been invoked, we have somewhat advanced the consideration of this cause, to the end that both the commissioners and appellants may, without unnecessary delay, address themselves to the discharge of their duties."

Whereupon the Commission, upon due notice to all parties, held a further hearing in the case and made a further report, under date of June 25, 1910, modifying its previous order, and again the petitioner, the Central Vermont Railway Company, appealed to the Supreme Court of the state. So far as the last order relates to the reconstruction of the passenger station at White River Junction, the

appealing party, the petitioner in this cause, made no objection, and no objection in that regard was made in the hearing before this court, but the same objections that were raised in this court were raised on that appeal. The same judge delivered the opinion of the court. See Bacon v. Boston & Maine R. Co., 83 Vt. 528, 77 Atl. 858. In that case the action of the Commission was affirmed, as heretofore stated. All the judges concurred in the conclusions of law, but Judges Watson and Powers dissented on the disposition of the case, suggesting that it be referred back to the Commission for further findings relative to the claimed interference with the so-called "team track." It is evident that when the petitioners elected to take their case into the Supreme Court of the state they made no mistake. That court was very careful to preserve all the rights of the petitioners; it examined all the facts, and weighed with great deliberation and research every question of law presented, and finally, on the third hearing, affirmed the order of the Public Service Commission, by its decree heretofore quoted verbatim.

That the present condition of affairs is dangerous to the public was not questioned in the state court, neither is it questioned in this court. All agree that something ought to be done. The main controversy at first was that the town of Hartford and the state of Vermont, under the statute of Vermont, should contribute with the railroads in interest to the expense. The petitioner, being defeated in that, sought in the state court a modification of the order of the Commission and prevailed, but, when the Commission modified its order, the petitioner was not satisfied with the plans, and insists that another way would alleviate the danger and be more convenient. This identical question was presented to the Supreme Court and passed upon in these words:

"It was the duty of the commissioners to relieve a situation demonstrated and confessed to be highly dangerous. It should be the part of the appellant not to magnify slight inconveniences, but to surmount them. If the manager of the Central Vermont is correct in his judgment that the team track at White River Junction, as it now is, has a capacity for five cars only, and that a team track with a capacity for ten or twelve cars is needed, then there is a difficulty presented which requires solution, but that difficulty cannot be attributed to the Public Service Commission."

Whether the order of the commission is performed or not, the petitioner has a difficulty to overcome relative to said team track, as its present condition seems to be inadequate for the public use in view of the increase of business thereabouts.

It is evident that the real basis of this petition is not that the Public Service Commission of Vermont has undertaken the "management and administration" of the affairs of this petitioner, and thus deprived it of constitutional rights, for in that the Supreme Court carefully guarded its rights, but it is the being compelled to submit to the "supervision and regulation" in detail contained in the commission's order, and that also the Supreme Court—the court to which this petitioner voluntarily appealed—has fully reviewed and decided, and the proceedings in the premises are still pending in that court awaiting the performance of the specific orders which it affirmed.

Section 720, R. S. U. S. (U. S. Comp. Ct. 1901, p. 581), reads as follows:

"The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a state, except in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy."

The petitioner contends that the proceedings in the state court are ended, and that the whole matter is now in the hands of the Public Service Commission, and therefore, section 720, above quoted, does not apply. So, too, it might be, and often has been, contended that when final judgment is rendered by a state court and execution issues, the case has passed out of the hands of the court to those of a sheriff, and therefore the power of the federal court to grant relief by injuction is not affected by said section. I do not concur in that view.

In Wayman v. Southard, 10 Wheat. 1, 6 L. Ed. 253, Justice Marshall, speaking for the court, said:

"The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied. Many questions arise on the process subsequent to the judgment, in which jurisdiction is to be exercised."

In Covell v. Heyman, 111 U. S. 176, 182, 4 Sup. Ct. 355, 358 (28 L. Ed. 390), Justice Matthews, speaking for the court, said:

"The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States, it is something more. It is a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system so far as their jurisdiction is concurrent; and, although they coexist in the same space, they are independent and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and, when one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void. The regulation of process, and the decision of questions relating to it, are part of the jurisdiction of the court from which it issues."

In Re Chetwood, Petitioner, 165 U. S. 443, 460, 17 Sup. Ct. 385, 392 (41 L. Ed. 782), Mr. Chief Justice Fuller, speaking for the court, said:

"The doctrine is firmly established that where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court, and that where property is actually in the possession of one court of competent jurisdiction such possession cannot be disturbed by process out of another court of concurrent jurisdiction. Moran v. Sturges, 154 U. S. 256 [14 Sup. Ct. 1019, 38 L. Ed. 981], and cases cited. And by section 720 of the Revised Statutes the granting of injunctions to stay proceedings in any court of a state is prohibited in express terms."

In Taylor v. Taintor, 16 Wall. 366, 370, 21 L. Ed. 287, Mr. Justice Swayne, speaking for the court, said:

"Where a state court and a court of the United States may each take jurisdiction, the tribunal which first gets it holds it to the exclusion of the other,

until its duty is fully performed and the jurisdiction invoked is exhausted; and this rule applies alike in both civil and criminal cases. It is indeed a principle of universal jurisprudence that where jurisdiction has attached to person or thing, it is—unless there is some provision to the contrary—exclusive in effect until it has wrought its function."

It remains in the hands of that court so long as there is any judicial proceeding essential to the full and complete execution of the judgment.

The doctrine that where different courts may entertain jurisdiction of the same subject, the court which first obtains it will retain it to the end of the controversy is not only upheld by numerous decisions, but it promotes comity between the federal and state courts, justice among litigants and tends to terminate litigation.

In Sharon v. Terry (C. C.) 36 Fed. 337, 359, 1 L. R. A. 572, Mr. Justice Field, said:

"Having first acquired possession of the subject, it cannot be rightly ousted by subsequent proceedings in another court having no supervising or appellate authority."

In Peck et al. v. Jenness et al., 7 How. 612, 624, 12 L. Ed. 841, Mr. Justice Grier, said:

"It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction it has a right to decide every question which occurs in the cause, and, whether its decision be correct or otherwise, its judgment, till reversed, is regarded as binding in every other court; and that where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation not merely in comity, but on necessity. For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one, if they dare to proceed in the other."

"In the case of Kennedy v. The Earl of Cassilis, Lord Eldon at one time granted an injunction to restrain a party from proceeding in a suit pending in the court of Sessions of Scotland, which, on more mature reflection, he dissolved; because it was admitted, if the Court of Chancery could in that way restrain proceedings in an independent foreign tribunal, the Court of Sessions might equally enjoin the parties from proceeding in chancery, and thus they would be unable to proceed in either court."

In Gaylord v. Fort Wayne, etc., Railroad, 6 Biss. 286, Fed. Cas. No. 5,284, Drummond, Judge, said:

"We think that there is no other safe rule to adopt, in our mixed system of state and federal jurisprudence, than to hold that the court which first obtains jurisdiction of the controversy, and thereby of the res, is entitled to retain it until the litigation is settled."

The citation of further authorities on this subject is needless. An examination of the state statute, under which the Public Service Commission was proceeding in this matter to remedy a dangerous condition of things shows conclusively, in my opinion, that this case is still pending in the state court. Observe its language relating to an appeal from decisions of the Public Service Commission.

Section 4599, Public Statutes of Vermont, provides:

"Any party to a cause who feels himself aggrieved by the final order, judgment or decree of said board shall have the right to take the cause to the

189 F.—44

Supreme Court by appeal, for the correction of any errors excepted to in its proceedings, or in the form or substance of its orders, judgments and decrees, on the facts found and reported by said board."

(This was amended by Act No. 116 of the Laws of Vermont for 1908 by changing the word "board" to "commission.")

Section 4600 provides:

"Appeals from said board shall be taken and the cause entered in the Supreme Court in the county where the cause arises, in the manner and under the law and rules of procedure which govern such appeals from the court of chancery. The Supreme Court shall have the same power therein as it has over appeals from such court. It may reverse or affirm the judgments, orders or decrees of said board, and may remand a cause to said board with such mandates as law or equity shall require; and said board shall enter judgment, order or decree in accordance with such mandates. Said appeal shall not vacate any judgment, order or decree of said board, but the Supreme Court or, when not in session, a judge thereof, may suspend execution of the same as justice and equity require, unless otherwise specifically provided by law."

Section 4601 relates to the recovery of costs, and provides that the same shall be taxed as in the court of chancery unless otherwise provided.

Appeals to the Supreme Court are regulated by the rules of chancery, and said court is vested with the same power that it has over appeals from courts of equity. Is there any question but what the power of the Supreme Court in chancery proceedings continues until its decrees and mandates are complied with and fully performed? The Public Service Commission (called a "board" in this statute) is directed to enter a judgment in accordance with the mandates of the Supreme Court. I hold that the cause is pending in that court, and that under section 720 R. S. U. S., above quoted, this court has no jurisdiction.

If this court had jurisdiction, I should decline the prayer of this petition. The Public Service Commission was constrained to remedy a dangerous condition at White River Junction, and in their efforts thus to do the Supreme Court has, in my opinion, protected the rights of this petitioner to the fullest extent. I concur with the court in its last decision that the present order of the Commission is a matter of regulation only as to an existing danger, a danger that the petitioner has permitted for many years and done nothing to remedy until it was taken in hand by the petitionees.

Let the petition be dismissed.