JENNIE GEORGE *v.* CONSOLIDATED LIGHTING COMPANY.

November Term, 1913.

Present:  POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed January 28, 1914.

*Eminent Domain—Nature of Power——Proceedings—Constitu-
tionality—Due Process of Law—Necessity of Taking—No.
116, Acts 1908—Administrative Officers—Exercise of Judi-
cial Functions—"Judgment"—Enforcement.*

Where the Legislature confers the general power, so far as necessity
requires, to take property by the exercise of the right of eminent
domain, the questions of the necessity of taking and of due com-
pensation must ultimately be determined by an impartial tribunal,
proceeding on due notice to interested parties and hearing before
deciding, and not acting unreasonably or arbitrarily.

The term "eminent domain" was not known to the common law,
and the only application of the doctrine of eminent domain at
common law was the exercise by the sovereign of the prerogative
right to enter upon lands for the defence of the realm.

Such exercises of the sovereign power as the entering upon lands for
the defence of the State, the laying waste of one's own country
to compel the retreat of a public enemy, the taking of land for
fortifications, and the like, are not properly referable to the power
of eminent domain, but rather to the war power, just as the right
to destroy private property in the exigencies of flood and fire is
referred to the police power rather than to the power of eminent
domain.

Where the Legislature has authorized the exercise of the power of
eminent domain by the taking of only such property as is neces-
sary, the question of the necessity of the taking is a judicial one
and must be determined either by a court, a jury, or some impartial
*quasi* judicial tribunal designated by statute, although not strictly
a court, and so §13, No. 116, Acts 1908, providing that whenever
it is necessary, in order to meet the reasonable requirements of
service to the public, that any public service company should cross
another's land with poles and wires, and it cannot agree with the

owner as to the matter of the necessity or of compensation, it may petition the Public Service Commission, which shall then, upon due notice to all parties in interest, determine the questions of necessity and of compensation, and render a "judgment" that shall be final except that an appeal to the Supreme Court is allowed, accords due process of law, although the determination of those facts is left to a body not strictly a court, but only an administrative body exercising *quasi* judicial functions.

Nor is §13, No. 116, Acts 1908, unconstitutional in that it empowers the Public Service Commission "to render judgment" on the questions of the necessity and of compensation, on petition of a public service company to take land in the exercise of the right of eminent domain, on the ground that the Public Service Commission cannot render "judgment" since it is an administrative body, for that word is there used in a comprehensive rather than a technical sense, denoting the duly announced findings and determination of the commission.

The procedure provided by §13, No. 116, Acts 1908, conferring on public service corporations the general power, so far as necessity requires, to take land by the exercise of the power of eminent domain, and providing that the Public Service Commission shall, on petition of such a corporation and on due notice and hearing, determine the questions of the necessity and of compensation, with the right of appeal to the Supreme Court, is available to a public service corporation whose charter, as amended by §3, No. 202, Acts 1902, provides a proper but wholly different method for the exercise of the power of eminent domain granted thereby.

The courts will protect and enforce the rights accruing to either party from a decision of the Public Service Commission in condemnation proceedings under §13, No. 116, Acts 1908.

PETITION for a writ of prohibition, brought to the Supreme Court for Washington County at its November Term, 1913, and then heard on petitionee's motion to dismiss. The opinion states the case.

*Theriault & Hunt* for the petitioner.

*Robert C. Bacon* and *Senter & Senter* for the petitionees.

The question of necessity, in the exercise of the power of eminent domain, is not one of a judicial character. *Miss. &*

*Rum River Boom Co.*, v. *Patterson,* 98 U. S. 402; *U. S.* v. *Jones,* 109 U. S. 513; *Cherokee Nation* v. *So. Kan. Ky.,* 135 U. S. 641; *Backus* v. *Fort Street Union Depot,* 169 U. S. 558; *Cramer* v. *R. R. Co.,* 5 Ohio St. 140; *City of St. Paul* v. *Nickol,* 42 Minn. 262; *Virginia Rucker R. R. Co.* v. *Elliott,* 5 Nev. 359; *N. Y., N. H. and H. R. R.* v. *Long,* 69 Conn. 424; *Boston* v. *Talbot,* 206 Mass. 82; *State* v. *Rapp,* 39 Minn. 67; 2 Lewis, Em. Dom., §511.

HASELTON, J.   This is a petition for a writ of prohibition to stop proceedings pending before the Public Service Commission.   Such proceedings were for the taking, in the exercise of the power of eminent domain, of lands of this petitioner, Jennie George, for the purpose of the construction of a transmission line by the erection of poles and the stringing of wires.   The proceedings were brought by the defendant, the Consolidated Lighting Company, before the Public Service Commission of this State under §13 of No. 116 of the Laws of 1908.   The defendants, other than the Lighting Company, make up the Public Service Commission.

Some questions discussed in the briefs were expressly waived in open Court, and on the hearing it was agreed that there were but two questions in the case.

1.   Is the section 13, above referred to, constitutional?

2.   If it is constitutional does it apply to the case of a Public Service Corporation with a Charter, granted prior to the general law of which the section in question is a part, providing a constitutional method of exercising the right of eminent domain.

Section 13, of No. 116, Acts of 1908, provides that whenever it is necessary in order to meet the reasonable requirements of service to the public that any company, of a class to which this Lighting Company belongs, should cross the lands of any person with pipe lines, conduits, or lines of poles and wires, and the company cannot agree with the owner of the lands as to the matter of necessity or of compensation it may prefer a petition to the Public Service Commission, and that the Commission shall then, upon due notice to all parties in interest, determine the questions of necessity and compensation and render a judgment which shall be final, except as an appeal to the

Supreme Court is allowed from the order or decrees of the commission.

No claim is made in this case that the use for which the statute authorizes private property to be taken is not a public one within the meaning of the constitutional provision relating to the matter of eminent domain. But it is claimed by the petitioner that the provision for the determination of the facts of necessity and due compensation in a particular case is unconstitutional.

We go a long way with the petitioner in her argument as to constitutional requirements in those regards. Such facts must ultimately be determined by an impartial tribunal proceeding on due notice to all parties in interest, hearing before deciding, basing its conclusion upon matters properly before it, and not acting unreasonably and arbitrarily. *Wheeler* v. *St. Johnsbury*, 87 Vt. 46, 87 Atl. 349; *Rutland* v. *Clarendon etc. Co.*, 86 Vt. 45, 83 Atl. 332, 44 L. R. A. (N. S.) 1204; *Deerfield etc. Co.* v. *Wilmington etc. Co.*, 83 Vt. 548, 77 Atl. 862; *Burlington* v. *Central Vermont Ry. Co.*, 82 Vt. 5, 71 Atl. 826; *Barber* v. *Vinton*, 82 Vt. 327, 73 Atl. 881; *Stearns* v. *City of Barre*, 73 Vt. 281, 50 Atl. 1086, 58 L. R. A. 240, 87 Am. St. Rep. 721; *Lynch* v. *Rutland*, 66 Vt. 570, 29 Atl. 1015; *LaFarrier* v. *Hardy*, 66 Vt. 200, 28 Atl. 1030; *Farnsworth* v. *Goodhue*, 48 Vt. 209.

Our later holdings are that where the Legislature delegates to private corporations affected with a public interest the power of eminent domain by way of what has been called "a roving franchise" the necessity for its exercise in a particular case and with respect to particular property must exist or such exercise will be invalid; and the necessity and its extent must be determined by an impartial tribunal.

Since such corporations although affected with a public interest are organized for private gain, if they are to judge of the necessity of a taking in a particular case and of the extent of the necessity, they are made judges in matters in which their private and pecuniary interests are involved. If tribunals may reap profit from their decisions they might as well be paid in money as in lands. The evil which our decisions combat is not of the subtle kind which baffles detection.

To leave one to be a judge in his own case and to say that his decision of facts must stand unless it can be affirmatively shown that he acted unreasonably or in bad faith or abused the

power conferred is contrary to every principle of justice. All experience shows that one may act honestly and in good faith and yet, if his private interest is involved in the matter before him, may arrive at conclusions at which an impartial man would not arrive.

To say that the function in question is a legislative or political one is to make no progress.

When the Legislature acts directly in such a matter, as it sometimes though rarely does, it acts as an impartial body, and when it delegates the power to take, it is bound to provide an impartial tribunal for the ultimate determination of the questions upon which the power to take depends.

This delegation of power is, in the case of most private corporations affected with a public interest, in the nature of a valuable concession. And when the power conferred is a general power to take so far as necessity requires, the necessity and extent of the taking ought in decent observance of fundamental principles to be determined by an impartial tribunal.

*The Law Quarterly Review,* a periodical edited by Sir Frederick Pollock, has in its number for July, 1910, a very timely article on the subject we are now considering. The writer of the article says, and we can only quote here and there: "Assuming these powers are exercised in the best possible faith it does not require a cynical turn of mind to foresee that disputes are bound to arise. Most questions have two sides to them. * * * This decision (referring to a specific case) is particularly instructive as showing the ease with which an informal tribunal, which disregards the ordinary safeguards of justice, can run off the rails, and with the best possible intention nevertheless go hopelessly wrong. * * It used also to be thought that judicial and political duties do not harmonize in the same individual, and that a man who takes upon himself the former should lay aside the latter. But if this is obsolete it must still be true that a man shall not be judge in his own cause. Yet a government official, whose duty it is to secure the smooth working of an act as much as to see that rights thereunder are accurately adjusted, may go straight from an acrimonious correspondence with a party to the seat of judgment."

This writer speaks of "leaving the economic question of the access to lands" to a partisan and interested tribunal as of a fact which needs only to be stated to be condemned.

We are told that proceedings for a taking of property by the power of eminent domain were at common law inquisitorial and *ex parte*. But our constitution intended to provide that they should not be inquisitorial and *ex parte*. In the orderly administration of constitutional government inquisitorial and *ex parte* measures may be taken for the institution of proceedings but not for their determination. Our Constitution of 1777 was the first to contain a provision respecting the taking of private property for public use, for while in the main we copied the Pennsylvania Constitution of 1776, the provision referred to was not found therein.

By our constitutional provision the right to take for public uses was recognized, but was limited to the requirements of necessity and carried with it the right of the owner to due compensation. Though many courts put upon constitutional provisions similar to our provision, though in general less specific than it, a different construction from that which we put upon our provision, we are content to abide by the doctrine hereinbefore stated.

In the discussion of the doctrine of eminent domain rather too much is said about the common law. The phrase itself was not known to the common law nor was the doctrine itself in any other application of it than was found in the exercise by the sovereign of the prerogative right to enter upon lands for the defence of the realm. *Att. Gen.* v. *Tamlane* (1879), 12 Ch. D. 214.

To concede that at common law the doctrine was in embryo is to make an abundant concession.

While the common law was developing the English Government was asserting its rights to defend its existence at all hazards. But the granting of the power of eminent domain to a private corporation organized for the purpose of gain as a valuable concession, on the ground that the corporation will be of service to the public as well as to its stockholders is a modern device finding its justification in modern conditions, and to be exercised in accordance with sound principles of economy and sociology, and to be safeguarded by fundamental principles.

References are also frequently made to Grotius, Vattel, Puffendorf, and other continental publicists none of whom wrote anything fairly applicable to the concession of the power of

eminent domain to private corporations affected with a public interest.

Vattel recognizes the right of expropriation only so far as its exercise is required by the public safety, Vattel, Law of Nations, §244.

Puffendorf is quoted as saying that the eminent domain is something that some are afraid of more on account of the name than the thing. But writers upon eminent domain do not often quote what he further says that the power can rightly be exercised only in the extremities of the state, illustrating his meaning by reference to the necessities of fortifications and sieges and, in dire extremities, ''of rifling private men's coffers,'' and laying waste one's own country to compel the retreat of an enemy.

Puffendorf, Book VIII, Division VII, pp. 681 and 682 of the English Translation, Edition of 1710.

To the same effect writes Burlamaqui. 2 Natural and Politic Law, Nugent's Translation, 211.

Such exercises of the sovereign power of the state are not properly referable to the power of eminent domain but to the war power and allied powers of sovereignty, much as the right to destroy private property in the exigencies of flood and fire is referred to the police power rather than to the power of eminent domain. *Aitkin* v. *Village of Wells River,* 70 Vt. 308, 40 Atl. 829, 41 L. R. A. 566, 67 Am. St. Rep. 672.

The systematical writers of the seventeenth and eighteenth centuries, above referred to, were contemplating, not the beneficial purposes contemplated by the law of eminent domain as we understand it. Such purposes were foreign to their discussions. They were considering rather the application in a strict sense of the maxim ''The Public Safety is the Supreme Law.''

But we cannot accede to the claim made by the petitioner that under our Constitution the questions of necessity and compensation must be determined by the judicial department of the government, by a body which in the strict sense is a court.

If an impartial tribunal is provided for the determination of the questions of necessity and compensation and the provisions with respect to notice and hearing and decision upon evidence and the judicial determination of questions of law are all provided for, the constitution is satisfied, and due process of law is accorded although the determination of facts is left

27

to a body not strictly a court but to an administrative body exercising quasi-judicial functions.     Such a body is our Public Service Commission.     *Sabre* v. *Rutland R. Co.,* 86 Vt. 347, 85 Atl. 693; *Bessette* v. *Goddard,* 87 Vt. 77, 88 Atl. 1.

In a note to *Lynch* v. *Forbes,* 42 Am. St. Rep. 402, a Massachusetts case, 161 Mass. 302, 37 N. E. 437, it is said by Freeman, or one of his associates in criticism of the principal case that "where the Legislature has only authorized the taking of such property as is necessary, the question of the necessity for taking is a judicial one which must be determined either by a court, a jury or some quasi-judicial tribunal designated in the statute."

It is there said that this rule is established by an almost overwhelming preponderance of authorities.     That it is so established we doubt, but that the rule is a sound one and the only one that accords with the usual constitutional requirements we confidently reaffirm.

The view here taken is not inconsistent with the holding in *Stearns* v. *City of Barre,* 73 Vt. 281, 50 Atl. 1086, 58 L. R. A. 240, 87 Am. St. Rep. 721.     The decision there is that the necessity of the taking and the extent of the necessity cannot be left to the final determination of the interested party instituting the proceedings.     The principle applied is that no man can be judge in his own cause, a principle which applies whether the "cause" is strictly a judicial one or not, that the final determination of questions between parties must be by an impartial tribunal.     As the applicable law then stood there was no such tribunal provided or contemplated.     The opinion sometimes speaks of the necessity of an "impartial tribunal" and sometimes of the necessity of a "judicial tribunal," but the two phrases are to be construed in the same sense.     The expressions used in the opinion are to be construed with reference to the facts of the case and the state of the law as it then was, and it would be a perversion of a sound legal principle to give to expressions, then incapable of being misunderstood, a meaning which would condemn as unconstitutional subsequent legislation not, of course, foreseen or contemplated by the court, on the ground that the impartial tribunal provided by such legislation was not a judicial tribunal in the full and strict sense although clothed with quasi-judicial functions.

It is not to be understood that an impartial commission provided by the Legislature, determining facts after due notice

and upon legal evidence, and so exercising quasi-judicial functions, does not meet the requirements of the constitution, as much as a commission appointed by the court to determine and report facts. The report of either commission is under the control of the court to the same extent. *Bacon* v. *Boston & Maine,* 83 Vt. 421, 76 Atl. 128; *Bacon* v. *Boston & Maine,* 83 Vt. 528, 77 Atl. 858; *Sabre* v. *Rutland R. Co.,* 86 Vt. 347, 85 Atl. 693.

As to the right of a party aggrieved by an order or ''judgment'' of the Public Service Commission to resort to the courts, we repeat in substance what was said in the Sabre case, that if a party pursues the orderly and not burdensome course pointed out by the statute he may present to this Court the questions of the rulings of the commission in receiving or excluding evidence the sufficiency of the evidence to sustain the findings under the rule that a mere scintilla of evidence will not sustain a finding and the sufficiency of the findings to warrant an order under the rule that the order must not be unreasonable or arbitrary in its character and that the powers given to this Court on appeal are supplemented by common law remedies so as to secure to every party interested in the action of the commission a vindication of his full rights against arbitrary and unreasonable action, usurpation of powers and acts in excess of authority.

The functions of the Public Service Commission, and its impartial character, considered in connection with the supervisory power of the courts, render it not only eminently fit but unobjectionable on constitutional grounds that it should be entrusted with the determination of the questions which it is authorized to determine by the legislation now under consideration.

That the railroad commissioners may be legally substituted by the Legislature for commissioners appointed by a court or by judges thereof to act in respect to the appraisal of damages for a taking in the exercise of eminent domain was decided in *Stimets* v. *Highgate,* 81 Vt. 231, 69 Atl. 878, where it is said of sec. 4, of No. 125, Acts of 1906, that ''the railroad commissioners take the place, certainly in respect to the appraisal of damages, of the commissioners provided by V. S. 3814 (P. S. 4398), and this completes the process of taking land under this act, when the taking is by the railroad corporation, and constitutes due process of law, for every one is given an opportunity to be heard on all questions in which they are interested.''

In that case it is noted that the appeal to this Court had been substituted for an appeal to the court of chancery, a matter since fully discussed and decided, *C. V. R. Co.* v. *State & Hartford,* 82 Vt. 145, 72 Atl. 324. In the Stimets case it was held that the method of taking provided by the act did not apply to a taking by towns simply because the Legislature had not made it so applicable.

Courts that differ with us as to the character of the question of necessity are agreed that the question of compensation must ultimately be left to an impartial tribunal; but they do not hold that for that reason the matter must be determined by the judiciary department. *Backus* v. *Fort Street etc. Co.,* 169 U. S. 569, 570, 42 L. ed. 853, 18 Sup. Ct. 445; *United States* v. *Jones,* 109 U. S. 513, 519, 27 L. ed. 1015, 3 Sup. Ct. 346.

The proceeding for the ascertainment of value says the Supreme Court of the United States "may be prosecuted before commissioners or special boards or the courts, with or without the intervention of a jury, as the legislative power may designate. All that is required is that it shall be conducted in some fair and just manner with opportunity to the owners of the property to present evidence as to its value, and to be heard thereon." *United States* v. *Jones,* 109 U. S. 513, 519.

It is claimed by the petitioner that the section of the statute in question, Sec. 13, No. 116, of the Acts of 1908, is unconstitutional because it empowers the Public Service Commission to render "judgment" in the matter of necessity and compensation and that it cannot render judgment since it is an administrative body. But this objection raises no serious question. The findings, decisions, and determinations of the commission may well enough be called judgments.

The word "judgment" as here used, is to be given a comprehensive rather than a narrow and technical meaning, is to be given a meaning which comports with a constitutional purpose.

The question remaining in the case is whether the general statutory provision under consideration, enacted in 1908, is applicable in view of the fact that the charter of the defendant Lighting Company, as amended in 1902, conferred upon it the power of eminent domain and provided an entirely constitutional method for the exercise of that power. Acts of 1902, 202, §3.

But the provision of the general law affects the remedy and the mode of procedure only and is not. unconstitutional and is applicable. *Backus* v. *Fort Street etc. Co.,* 169 U. S. 558; *Oakes Ames* v. *Lake Superior etc. R. Co.,* 21 Minn. 241; *McCrea* v. *Port Royal R. Co.,* 3 S. C. 381, 16 Am. Rep. 729; *Baltimore etc. R. Co.* v. *Nesbit,* 10 How. 395, 13 L. ed. 469; *Chicago etc. R. Co.* v. *Guthrie,* 192 Ill. 579, 61 N. E. 658; *Paterson etc. Co.* v. *DeGray,* 70 N. J. L. 59, 56 Atl. 250.

The Lighting Company and any corporation with like rights is entitled to proceed before the Public Service Commission in the matter of eminent domain. Whether the general law in that regard supersedes and repeals constitutional charter provisions in force before the general law took effect, or whether the general law merely furnishes a concurrent method of procedure, it is not necessary to determine until some corporation entitled to proceed under the general law, claims the right to proceed by virtue of a constitutional provision of a charter granted before the general law took effect. The importance of the question requires us to decline considering it until its consideration is necessary. The following cases illustrate the weight of the question and are referred to solely because they show the propriety of not discussing it till it is necessary to decide it. *Central Vermont R. Co.* v. *State & Hartford,* 82 Vt. 146, 72 Atl. 324; *Town School Dist.* v. *School Dist. No. 2,* 72 Vt. 451, 48 Atl. 697; *Brown* v. *United States,* 171 U. S. 631, 43 L. ed. 312, 19 Sup. Ct. 56; *Rodgers* v. *United States,* 185 U. S. 83, 46 L. ed. 816, 22 Sup. Ct. 582; *Marlor* v. *Philadelphia etc. R. Co.,* 166 Pa. St. 524, 31 Atl. 255; *Treacy* v. *Elizabethtown, etc. R. Co.,* 85 Ky. 270, 3 S. W. 168; *Hunt* v. *Card,* 94 Me. 386, 47 Atl. 921; *State* v. *Jersey City,* 54 N. J. L. 49, 22 Atl. 1052; *Paterson etc. Co.* v. *DeGray,* 70 N. J. L. 59, 56 Atl. 250; *Norwich* v. *Johnson* (Conn.) 84 Atl. 727.

The question of the right of the commission to enforce its decisions or orders or judgments by process does not arise. The decision of the commission if favorable to the condemnor determines his rights upon payment of the compensation awarded, and the right of the landowner to such compensation, and as in cases of condemnation heretofore arising, it is for the courts to enforce and protect the rights of both. *Bridgman* v. *St. Johnsbury etc. Co.,* 58 Vt. 198, 2 Atl. 467; *Adams* v. *St. Jonhsbury etc. Co.,* 57 Vt. 240; *Kittel* v. *Missisquoi R. Co.,* 56 Vt. 96;

*Kendall* v. *Missisquoi R. Co.,* 55 Vt. 438; *Knapp* v. *McAuley,* 39 Vt. 275; *McAuley* v. *Western Vermont R. Co.,* 33 Vt. 311, 78 Am. Dec. 627.

Our conclusion is that it is the right and duty of the Public Service Commission to proceed in the matter of the petition of the Consolidated Lighting Company, and upon due notice and hearing to determine the questions of necessity and compensation which they are therein asked to determine.

*Petition for writ of prohibition dismissed with costs.*