IN RE BELLOWS FALLS HYDRO-ELECTRIC CORPORATION.

May Term, 1946.

Present: MOULTON, C. J., SHERBURNE and STURTEVANT, JJ. and CLEARY and ADAMS, Supr. JJ.

Opinion filed May 21, 1946.

*Barber & Barber* and *Witters & Longmoore* for the petitionees.

*Wilson & Keyser* (*F. J. Dunn* of the Massachusetts bar, of counsel) for the petitioner.

STURTEVANT, J. This is an appeal from an order of the Public Service Commission, purporting to grant authority to the Bellows Falls Hydro-Electric Corporation to redevelop its water power facilities on the Connecticut River by the erection of a dam in that stream, between the towns of Hartford, Vermont, and Lebanon, New Hampshire. The petitioner is a public service corporation, organized under the laws of this State and the dam which it proposes to erect is for the purpose of developing electric power. The petition was brought, hearing had thereon, findings of fact made and filed by the Public Service Commission and its order, dated November 9, 1945, issued thereon, all in accordance with the provisions of P. L. 6122 as amended by No. 138 of the Acts of 1945. So far as here material, the provisions of that Act are as follows: "A person . . . . or domestic or foreign corporation shall not construct any dam . . . . in any stream, or river within or along the borders of this state where Vermont land is proposed to be overflowed, . . . . unless authorized by the Public Service Commission so to do . . . ."

While none of the briefs filed in this case makes any mention of the provisions of the Federal Power Act, 16 USCA § 791a et seq., yet this Court is bound to take judicial notice of all provisions of that Act which apply to the subject matter of the petition. *Bouchard* v. *Central Vt. Ry. Co.*, 87 Vt 399, 401, 89 A 475, LRA 1915 C 33. Section 23 (b) of that Act states as follows:

"It shall be unlawful for any person, State or municipality, for the purpose of developing electric power, to construct, operate or

maintain any dam, . . . . across, along, or in any of the navigable waters of the United States, . . . . except under and in accordance with the terms of a permit or valid existing right-of-way granted prior to June 10, 1920, or a license granted pursuant to this Act. . . . ."

■■ That the Connecticut River is a navigable stream of the United States is not in question here. Therefore, at the outset, we are confronted with the following questions. Does P. L. 6122 as amended by No. 138 of the Acts of 1945 have any application to the subject matter of the petition in this case when considered in connection with the Federal Water Power Act, enacted by Congress June 10, 1920, as amended by the Federal Power Act approved August 26, 1935? In short, did the Public Service Commission have jurisdiction of the subject matter of this petition? If not, then this appeal brings nothing to this Court for review and it follows that we are without jurisdiction to consider the merits of the case. Although neither of the parties is raising the question of jurisdiction by motion, or otherwise, nevertheless, it has long been the law of this State that a court will dismiss a cause at any stage, whether moved by a party or not, when it is discovered that it has no jurisdiction; and also that jurisdiction over the subject matter of a suit can not be conferred by agreement or consent of the parties when it is not given by law. *Miner's Executrix* v. *Shanasy et al*, 92 Vt 110, 112, 102 A 480; *In Re Jesse Carlton*, 108 Vt 312, 315, 187 A 423; also see *Howe* v. *Lisbon Sav. Bank*, 111 Vt 201, 14 A2d 13, for a discussion of the subject of court jurisdiction.

The answer to the question before us is found in the opinion of the United States Supreme Court in *First Hydro-Electric Cooperative, Petitioner,* v. *Federal Power Commission*, US, 66 S Ct 906, 90 L Ed 855, handed down April 29, 1946. It appears from the facts, as stated in that opinion, that, in that case, the petitioner is a cooperative association organized under the laws of Iowa, with power to generate, distribute and sell electric energy. On June 29, 1940, pursuant to the provisions of the Federal Power Act, it filed with the Federal Power Commission, a declaration of intent to construct and operate a dam, reservoir and power plant on the Cedar River near Moscow, Iowa. On April 2, 1941, it also filed with the Commission an application for a license, under the provisions of the Federal Power Act, to construct an enlarged project. This

project contemplated taking most of the water from the Cedar River at Moscow, Iowa, and by a diversion canal, conduct it to Muscatine, Iowa, where it would enter the Mississippi River. The Cedar River enters Iowa from the north, flows through that State to Columbus Junction, Iowa, where it joins the Iowa River from which point the last named river flows southeasterly into the Mississippi at a point about twenty miles below Muscatine. Among other facts, the Commission found that these rivers are navigable and that under the provisions of the Federal Power Act, a license is required for the proposed project. The petitioner filed an application for such license on August 11, 1941. On November 4, 1941, the Commission granted the State of Iowa's petition to intervene, and since that time, that State has actively opposed the granting of the federal license as prayed for by the petitioner. After hearing, the Commission filed findings of fact approving the project. Referring to this matter, at page      of      US, page 910 of 66 S Ct, page 858 of 90 L Ed, the Court states: "The Commission, however, was confronted at that point with a claim by the State of Iowa that the petitioner must not only meet requirements for a federal license for the project under the Federal Power Act, but should also present satisfactory evidence of its compliance with the requirements of Chapter 363 of the code of Iowa, 1939, hereinafter discussed, for a permit from the State Executive Council of Iowa for the same project."

It appears that the Commission was of the opinion that this claim of the State was without merit; however, it dismissed the petition without prejudice, for the purpose of affording an opportunity of obtaining a determination of this question by the Courts. On the applicant's application for a review of the dismissal, it was affirmed by the United States Court of Appeals for the District of Columbia. 151 F2d 20. Then the United States Supreme Court granted certiorari. At page      of      US, page 911 of 66 S Ct, page 859 of 90 L Ed, the Court states: ". . . . For the purposes of this application, it is settled that the project will affect the navigability of the Cedar, Iowa and Mississippi Rivers, each of which has been determined to be a part of the Navigable waters of the United States, . . . . ; and will require for its construction a license from the Commission. The project is clearly within the jurisdiction of the Commission under the Federal Power Act. The question at

issue is the need, if any, for the presentation of satisfactory evidence of the petitioner's compliance with the terms of Chapter 363 of the code of Iowa. . . . ." Referring to this same matter, at page     of     US, page 911 of 66 S Ct, page 860 of 90 L Ed, the Court states: § 7767 of that Chapter is alleged to require the issuance of a permit by the Executive Council of the State and is the one on which the Commission's order must depend. It provides:

'7767 Prohibition. Permit. No dam shall be constructed, maintained or operated in this state in any navigable or meandered stream for any purpose, or in any other stream for manufacturing or power purposes, nor shall any water be taken from such streams for industrial purposes, unless a permit has been granted by the executive council to the person, firm, or corporation, or municipality constructing, maintaining or operating the same. ' "

In answer to Iowa's claim on this matter, the Court, at page of US, page 911 of 66 S Ct, page 860 of 90 L Ed, states: "To require the petitioner to secure the actual grant to it of a state permit under § 7767 as a condition precedent to securing a federal license for the same project under the Federal Power Act would vest in the Executive Council of Iowa a veto power over the federal project. Such a veto power could easily destroy the effectiveness of the federal act. It would subordinate to the control of the State the 'comprehensive' planning which the Act provides shall depend upon the judgment of the Federal Power Commission or other representative of the Federal Government."

At page     of     US, page 912 of 66 S Ct, page 861 of 90 L ed, the Court points out that the provisions of § 7771 of the Iowa Code, if given effect, make the proposed project impossible because, among other things, that statute provides: "If it shall appear to the council that . . . any water taken from the stream in connection with the project is returned thereto at the nearest practicable place, . . . , it shall grant the permit." The proposed project contemplates taking most of the water from the Cedar River and conducting it to the Mississippi which can not be done if those statutory provisions are complied with. At pages     of     US, pages 912 and 913 of 66 S Ct, page 861 of 90 L Ed, the Court shows that it was this proposed diversion of the waters of the Cedar River that commended this proposed project to the Commission.

At page     of     US, page 914 of 66 S Ct, page 863 of 90 L Ed,

the Court holds : "The securing of an Iowa state permit is not in any sense a condition precedent or an administrative procedure that must be exhausted before securing a federal license." At page of US, page 920 of 66 S Ct, page 869 of 90 L Ed, it is stated : "The detailed provisions of the Act providing for the federal plan of regulation leave no room or need for conflicting state controls." On the same page the Court cites with approval, *United States* v. *Appalachian Power Co.,* 311 US 377, 404, 405, 426, 427, 61 S Ct 291, 85 L Ed 243. At page of US, page 920 of 66 S Ct, page 869 of 90 L Ed, the Court quotes at length from that case. That quotation contains the following : ". . . , but there is no doubt that the United States possesses the power to control the erection of structures in navigable waters." Also on that page, the concluding holding of the Court is : "It is the Federal Power Commission rather than the Iowa Executive Council that under our constitutional Government must pass upon these issues on behalf of the people of Iowa as well as on behalf of all others."

The judgment of the lower court was reversed with direction that the case be remanded to the Federal Power Commission for further proceedings in conformity with that opinion.

From the foregoing it follows that the Public Service Commission was without authority in law to entertain the petition in the case at bar and should have dismissed the same. It follows that the attempted appeal presents no question on the merits of the case for our consideration.

*The judgment order of the Public Service Commission, dated November 9, 1945, purporting to authorize the petitioner, Bellows Falls Hydro-Electric Corporation, to construct a dam on the Connecticut River as prayed for in the petition, is reversed and the petition is dismissed for want of jurisdiction.*

ON MOTION TO STRIKE OFF JUDGMENT ORDER.

After this Court had dismissed the petition, on its own motion, on the ground that the public service commission was without jurisdiction in the matter, the petitionees filed a motion to strike off the judgment and enter a new one differing from the one now in force only in that the proposed judgment would award costs to the petitionees.

P. L. 6066, so far as here material states:

> "The law regarding security for and recovery of costs in cases before the commission, . . . , except investigations regarding the public safety or convenience, shall be the same as in the court of chancery, and appeals therefrom, unless otherwise specifically provided by law."

P. L. 1847 so far as here material is as follows:

> "When a person causes process to be served on another and . . . , or if such action is abated or dismissed for want of jurisdiction, the court to which such process is made returnable shall give judgment for the defendant to recover reasonable costs."

The petitionees state the questions presented in their motion as follows:

> "It is manifest that the judgment rendered should be stricken off and a new judgment rendered for the petitionees to recover their costs, unless it is held either that this proceeding was merely an investigation "regarding the public safety or convenience," or that the notice mailed by registered mail to the petitionees was not process within the meaning of P. L. 1847, as interpreted in view of sec. P. L. 6066."

In short, the petitionees state that if this proceeding is found to be one included in the exceptions mentioned in P. L. 6066, in such case, their motion can not be granted, neither can it be granted if the notice sent to the petitionee is not process within the meaning of P. L. 1847.

§ 1 of No. 138 of the Acts of 1945, under which this proceeding was brought, directs that after the petition is filed and notice given as therein directed, the commission shall proceed to hearing. The first question to be there determined is whether the proposed construction will serve the public good. The term "public good" is there defined to mean "that which shall be for the greatest benefit of the people of the State of Vermont." § 1 of the act also states various factors to be considered by the commission in the determination of this question of public good. Clearly this proceeding au-

450

thorized by this law is an investigation by the commission to determine certain facts upon which existing laws may operate. *Trybulski et al* v. *Bellows Falls Hydro-Electric Corporation,* 112 Vt 1, 7, 20 A2d 117.

Convenience is defined to be "that which promotes comfort or advantage; something suited to one's wants; an accommodation; specifically, an appliance or utensil for personal ease or comfort." Webster's New International Dictionary.

It appears that the term "public convenience" as used in P. L. 6066, there has the same meaning as the term "public good" as used in § 1 Acts of 1945.

█ It follows from the foregoing that this proceeding comes within the terms of the exceptions mentioned in P. L. 6066. As we have already seen the petitionees make no claim that under these circumstances their motion can be granted. Therefore it is not necessary to consider other questions raised by them.

*Motion to strike off the judgment is denied.*