J. Richmond Page,
Cattaraugus County Judge and Acting Judge for Niagara County. The premises which the petitioner seeks to obtain immediate possession of consist of improved real property in the County of Niagara and are required for the improvement and development of the Niagara River for use in connection with the Niagara Power Project of the Power Authority of the State of New York, hereinafter referred to as the Power Authority. There were five summary proceedings brought by the petitioner before this court and the same defense was set forth by the respondents herein, therefore all five of these summary proceedings are to be treated as one.
The proceedings were instituted by the Superintendent of Public Works as agent of the Power Authority of the State of New York against the respective respondents to obtain the possession of the premises described in each of the petitions, in accordance with the provisions of section 30 of the Highway Law, as made applicable by title 1 of article 5 of the Public Authorities Law of the State of New York.
Upon the return date of the summary proceedings, motion was made by counsel for the petitioner to strike out the answers as being sham and frivolous, and motions were also made by *789 counsel for the respondents to strike out the petition as insufficient in law.
The major question brought before this court is “ whether or not the petitioner was authorized by law, or by statute, to obtain possession of the lands described in the petition.”
It is not disputed that the waters of the Niagara River are under the jurisdiction and control of the Federal Government and for the State of New York to utilize the United States’ share of such waters, permission would have to be granted by the Federal Government. The Power Authority is a State instrumentality created by chapter 772 of the Laws of 1931, and the Power Authority Act has been amended in subsequent years and is found in the Public Authorities Law (§ 1000 and following sections) and until 1958, it was available only for the purposes of the St. Lawrence River development. Prior to 1958, section 1007 of the Public Authorities Law did not refer to the development of the Niagara River but contained the following provisions in subdivision 7 of that section: “ The authority may, at its option, acquire such real property within the state of New York, under the general condemnation law or, in the event it is a licensee of the federal power commission it may acquire such real property as is necessary for its purposes through the exercise of the right of eminent domain, as provided in section twenty-one of the federal power act, as amended.”
The Power Authority applied to the Federal Power Commission under Project No. 2216 for a license for the development of the Niagara Power Project and an order was issued January 30, 1958 which directed the issuance of such a license.
It is the contention of the respondents that the Power Authority is strictly limited to the rights and powers of eminent domain specifically set out in the Federal Power Act and that the petitioner cannot avail itself of the powers and privileges of eminent domain set out in the statutes of the State of New York.
It is their claim that the power of eminent domain in this case stems from a license issued to the petitioner, pursuant to Public Law 85-159 (71 U. S. Stat. 401) which is now sections 836 and 836a of title 16 of the United States Code, and they further contend that one of the conditions of the granting of such a license was contained in section 814 of title 16 of the United States Code and referred to as section 21 of the Federal Power Act as amended, and that the. petitioner, by virtue of this section, became vested with the governmental power of eminent domain in the District Court of the United States for the district *790 in which such land or the property may be located, or in the State courts.
The Power Authority of the State of New York is an agency of the State and by act of Legislature has been granted the power of eminent domain. The Legislature, by amending subdivision 10 of section 1007, has given to the Power Authority an additional method of exercising that power of eminent domain. The Federal Power Act by its very wording does not create an exclusive law of eminent domain for any licensee. The wording of the statute involved, section 21 of the Power Act (U. S. Code, tit. 16, § 814), states as follows: “ When any licensee cannot acquire by contract or pledges * * * it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such land or other property may be located, or in the State courts.”
The use of the word “may” indicates that this is not a mandatory statute and merely gives to the licensee a method which can be used if the licensee desires to exercise its right of eminent domain in that way. In other words, this section is not an exclusive law of eminent domain but is complementary to the State statutes and an agency of the State which accepts a license can proceed either under the State’s own power of eminent domain or under the statute above referred to. In this proceeding the State agency has elected to proceed under the statutes of the State of New York. In Oakland Club v. South Carolina Public Service Auth. (110 F. 2d 84) the court stated in effect that the State agency has an election to exercise the power of eminent domain either under the specified enumerations of the Federal Power Act or under the broader provisions of the Eminent Domain Act of the State of South Carolina. This is a well-established rule.
The Federal statute of eminent domain merely gives to a licensee that does not have the power of eminent domain such a right but it is not intended to interfere with the power of eminent domain already existent in a State agency and the State does not surrender such power of eminent domain by the acceptance of a license.
Nowhere in the license granted by the Federal Power Commission is there any limitation with respect to the manner in which property may be acquired nor is there any actual limitation insofar as the Federal Power Commission Act is concerned. There is nothing in the law which suggests that the State of New York ever intended, nor did it ever surrender its sovereign power of eminent domain by authorizing and permitting the *791 Power Authority of the State of New York to accept a license. The provisions of section 21 of the Federal Power Act conferring the right of eminent domain upon licensees thereunder should be construed together with the laws of the State of New York in determining the power of eminent domain possessed by the Power Authority which was licensed under the Federal Power Act. Burnett v. Central Nebraska Public Power & Irrigation Dist. (147 Neb. 458) held substantially as stated above in reference to a Nebraska statute of condemnation.
The so-called Appropriation Act under which the property in question has been appropriated has been passed upon by the courts of the State of New York. In Cuglar v. Power Auth. (4 Misc 2d 879) the court carefully reviewed the power of the Authority to take pursuant to subdivision 10 of section 1007 of the Public Authorities Law of the State of New York. It is true that had to do with the development of the St. Lawrence River, and it discussed that section together with the provisions of the license granted to the State of New York, and ruled that the procedure was in proper order. And in this case, as well as the case of St. Regis Tribe v. State of New York (5 N Y 2d 24), the Court of Appeals sustained the proposition that the Power Authority in constructing the St. Lawrence Power Project was performing a State function and was entitled to employ the State’s power of eminent domain. Section 1001 of the Public Authorities Law contains a declaration of policy which states in part and in effect that the St. Lawrence and Niagara Projects are to be constructed for State purposes, and section 1002 creating the Power Authority of the State of New York states: “ and which shall have the powers and duties hereinafter enumerated, together with such others as may hereafter be conferred upon it by law.”
It is obvious that the State never surrendered nor did it intend to surrender its power of eminent domain by the acceptance of a license from the Federal Power Commission.
The respondents call the court’s attention to a case (Tuscarora Nation of Indians v. Power Auth., 257 F. 2d 885) decided in the United States Court of Appeals for the Second Circuit July 24,1958 involving the Tuscarora Nation of Indians against the Power Authority of the State of New York in which the court questioned the validity of the procedure followed by the Power Authority in appropriating the lands of the Indian nation. The procedure followed was identical with the procedure followed in these cases. Statements were made by that court stating that the procedure was invalid, but the case was before the court to determine the proper method of taking the *792 lands of the Tuscarora Nation of Indians and the validity of the Appropriation Act was not in question. The case is not clear when referring to this section as to whether or not their ruling is applied strictly to the problem involved in the taking of Indian lands.
Can a Federal court pass upon the validity or constitutionality of a State statute which is not squarely before it? I think not. In the above case relied upon by respondents, the validity and constitutionality of the so-called Appropriation Act was not before the court, the only question being before that court is the taking of Indian lands. It is the court’s opinion that there was no declaratory decision by that court as to the validity of the Appropriation Act which is binding upon the courts of the State of New York.
The court realizes that speed and urgency in the development of the Niagara Power Project is important to the State of New York and the people of Western New York, but the court is also aware that it is entrusted with the protection of the rights of the citizens of this State, and speed and urgency is not a sufficient excuse to abridge the rights of those citizens.
In the opinion of the court, the rights of the citizens under the Appropriation Act are fully protected. Section 30 of the Highway Law provides under subdivision 13 a method of a payment of 60% of the amount determined by the Superintendent of Public Works to be the value of such claim, reserving to such owner or owners, however, the right to file such claim with the Court of Claims or, if the claim has been filed, reserving the right to prosecute said claim. Thus the respondents have the right to receive a partial payment immediately and a right given and reserved to them to proceed in the courts of the State of New York to recover what they feel is a just and proper compensation.
It is the opinion of this court that the procedure followed by the State of New York in the appropriation of respondents’ land is a proper and valid procedure.
It is the contention of the respondents that the petition is insufficient as it fails to allege that funds have been made available by the Authority for the payment of the costs and expenses of the appropriation. It is true that the making of funds available may have been a prerequisite to the initiation of the appropriation proceeding, but it is not a prerequisite to the bringing of summary proceedings to remove the occupants and does not have to be alleged in the petition. The only requirement is proof that title is vested in the State and that the owner or occupant *793 who is sought to he removed has been served with a 40-day notice to quit.
In accordance with this opinion, the motions of the respondents are hereby denied and the motions made by the petitioner also denied, and it is directed that the matter be returned to this court for trial of any issues of fact which may be raised in the summary proceedings before this court.