## Citizens Utilities Co. v. Charles T. Prouty et als

[ 176 A.2d 751 ]

September Term, 1961

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed November 21, 1961

*Clifton G. Parker* and *Gallop, Climenko & Gould* (of the New York bar) for the petitioner.

*Edwin W. Lawrence* and *Arthur L. Graves* for the petitionees.

**Smith, J.** This is a joint appeal by petitioners and petitionees from an order of the Public Service Commission granting to the petitioner, in accordance with its petition for eminent domain, title to

certain real estate, owned by the petitionees, located on both sides of the Clyde River, in the city of Newport, Vt., and awarding compensation to the petitionees for such taking.

The petitioner is a Delaware corporation, licensed to do business in the state of Vermont, and is a public service company operating and carrying on the business of supplying electric power and energy to consumers of various kinds in Essex, Orleans, Franklin and Grand Isle counties in the state of Vermont.

The petitionees are the owners of lands situated on the banks of the Clyde river and are the successors in title to Abbie D. Prouty, now deceased.

The petitionees in their appeal to this Court have denied jurisdiction of the Vermont Public Service Commission to condemn lands owned by them under the eminent domain proceedings brought by the petitioner before the Commission. The petitioner, on its part, brings its appeal here because of claimed error on the part of the Vermont Public Service Commission in its determination of the fair market price of the land which the petitioner has been ordered to pay to the petitionees under the order of the Commission.

The jurisdictional question presented by the petitionees is the paramount one for our consideration, for if jurisdiction is lacking in the Public Service Commission then the entire order is of no force and effect.

The Clyde River rises in the northeastern part of Vermont and empties into Lake Memphremagog at Newport. Upon this river the petitioner has built hydroelectric dams at several places including the outlet of Seymour Lake and Echo Pond, and also across the river at West Charleston and at Clyde Pond. The water from the Clyde Pond storage reservoir is conveyed by steel penstocks to the powerhouse of the petitioner at Newport. These penstocks are located upon the land of the petitionees, and it is this land that the petitioner seeks to acquire by the proceedings in eminent domain before the Public Service Commission. The total area of the land is about 5.4 acres, and it lies for about 700 ft. on both sides of the Clyde River between the Clyde Pond dam and the Newport powerhouse.

The owner of these lands in 1930 was one Abbie D. Prouty. A lease was entered into in that year between Abbie D. Prouty and the Newport Electric Company, the petitioner's predecessor, for a

twenty-five year period, at a yearly rental of $7,500, plus taxes. An option to purchase the land for $150,000, expiring Oct. 1, 1935, and contained in the lease, was not exercised by the petitioner.

Under the terms of the lease, the option not having been exercised, there was an agreement that at the expiration of the lease the lessor would sell, and the lessee would buy the land at a mutually agreeable price. In the event they could not agree upon a price, then the lessee was to bring condemnation proceedings "before the tribunal then having jurisdiction," within six months from the expiration date. If the lessee failed to bring such proceedings, then it was to pay to the lessor $300,000 for the land described in the lease.

The parties did not agree upon a price for the land and the lessee brought this condemnation proceeding before the Public Service Commission within the six month period, on March 21, 1956.

The contention of the petitionees before the Public Service Commission, and now here, is that the Public Service Commission has no jurisdiction because of the fact that the Clyde River is navigable and is subject to the jurisdiction of the Federal Power Commission.

The petitionees, on May 11, 1956, sought an injunction to prohibit further proceedings before the Public Service Commission, in the United States District Court in Vermont. The United States District Court refused the injunction, but found the Clyde River to be a navigable stream and granted judgment for $300,000 to the petitionees here. Upon appeal from the District Court, the United States Court of Appeals for the Second Circuit reversed the District Court and indicated that the question of jurisdiction was properly an issue for the Public Service Commission, itself, to determine. *Prouty* v. *Citizens Utilities Co.*, 257 F.2d 692, cert. den. 358 U. S. 867, 79 S.Ct. 98, 3 L.Ed.2d 99.

The Federal Power Commission started an investigation into the matter of the navigability of the Clyde River on June 24, 1957. An order was issued from the Federal Power Commission on Feb. 16, 1959 directing the petitioner to apply for a license under the Federal Power Act for the continued operation and maintenance of its projects consisting of a Unit No. 11, Newport and Charleston hydro-electric developments and the Seymour Lake and Echo Pond dams. In the opinion upon which its order was based the Federal Power Commission found the Clyde River to be navigable from its sources to Lake Memphremagog.

An appeal from the opinion and order was taken by the petitioner to the United States Court of Appeals, 2nd District. On May 24, 1960, in an opinion written by Judge Learned Hand, the United States Court of Appeals for the Second Circuit affirmed the order of the Commission. The opinion stated that the last mile of the Clyde River was navigable, left the question of how much of the Clyde River above the one mile was navigable "open," but did find that all of the petitioner's dams on the Clyde river "affected" the navigability of the last mile. *Citizens Utilities Co.* v. *Federal Power Commission,* 279 F.2d 1, cert. den. 364 U.S. 893, 81 S.Ct. 224, 5 L.Ed.2d 188.

The order of the Public Service Commission was filed on Nov. 10, 1960. The report of the Commission indicates its knowledge of the order of the Federal Power Commission and of the decision of the United States Court of Appeals, 2nd District, affirming that order. The report also states that the petitioner does not have the license under the Federal Power Act which it was ordered to obtain by the Federal authorities.

The Public Service Commission decided that the petition before it, which asks for the condemnation of land between a power plant and a dam, and over which land penstocks carry water from dam to powerhouse, was governed by the provisions of 30 V.S.A. §111 (1). This section provides:

"When the Commission finds, in the case of dams, that a certificate of public good authorizing the project as herein required, or a license from the Federal Power Commission has been granted;"

that the Commission then has authority to proceed with the petition for condemnation of land by eminent domain.

■ The jurisdiction of the Public Service Commission is limited to "dams and projects that relate to or are incident to the generation of electric energy for public use." 10 V.S.A. §701 (a).

■ Referring again to 30 V.S.A. §111 (1), in Sec. 115 of 30 V.S.A., it is provided "without limiting or enlarging the scope of sections 109-114 of this title, it is hereby specifically provided that they shall apply to the condemnation of rights to construct and maintain pipe lines, conduits, lines of poles, towers or wires, and to rights to appropriate, divert and flow back water." We therefore agree with the Public Service Commission that the dam and powerhouse with

which this land is associated must be authorized under Section 111 (1) of 30 V.S.A.

The certificate of public good mentioned in 30 V.S.A. §111 (1) is issued by the Public Service Commission after a hearing on a proposed project and a determination by the Commission that the proposed project is for the benefit of the people of the state of Vermont. 10 V.S.A. §706. The petitioner has no certificate of public good in the instant case, but it is the position of the Commission that it may dispense with this requirement because most of the original project here involved was constructed before such a certificate was made a necessity for proceedings in eminent domain in the case of dams (1945).

The petitionees have briefed their exceptions to this waiver on the part of the Commission of the possession of a certificate of public good, but it is the lack of a license from the Federal Power Commission on which their principal objection to jurisdiction is made, and to this we turn our immediate attention.

The Public Service Commission has stated in its report that the portion of the Clyde River herein involved has not been declared to be navigable, but that if the river were navigable, and a license required of the petitioner, it would still have jurisdiction of the matter.

The United States Court of Appeals for the Second Circuit stated:

"Since there can be no doubt that the last mile of the river is 'navigable' without change the only question is whether the amount of water by which the petitioner can vary its flow affects that part of the river enough to give the (Federal Power) Commission jurisdiction over the granting of a license."

In affirming the order of the Federal Power Commission requiring an application for a license on the part of the petitioner, Judge Hand declared:

"Concluding as we do that all the petitioner's dams on the Clyde River do 'affect the navigability' of the last mile of that river it becomes unnecessary for us to decide how much, if any, of the river above Unit No. 11 is 'navigable'."

What the federal court has said here is that it is unnecessary to determine whether the Clyde River, above the last mile, is navigable, because the flow of such upper part of the river has a direct effect upon

the part declared to be navigable, and thus any projects upon this upper part of the river were under the jurisdiction of the Federal Power Commission. This is borne out completely by the fact that the order requiring the petitioner to obtain a license (which was affirmed) included the Clyde River dam, with which we are concerned, as well as two others even more distant up the stream.

The licensing power of the Federal Power Commission is set forth in the first sentence of Section 23, 16 U.S.C.A. §817:

"It shall be unlawful for any person, state or municipality, for the purpose of developing electric power, to construct, operate, or maintain any dam, water conduit, reservoir, power house, or other works incidental thereto across, along, or in any of the navigable waters of the United States, or upon any part of the public lands or reservations of the United States (including the Territories) or utilize the surplus water or water power from any government dam, except under and in accordance with the terms of a permit or valid existing right of way granted prior to June 10, 1920, or a license granted pursuant to this chapter."

The next sentence of Section 23, U.S.C.A. §817 applies to waters other than navigable waters over which the Congress has jurisdiction and makes the same licensing requirement. The case of *Georgia Power Company* v. *Federal Power Commission,* 152 F.2d 908, cited by Judge Hand with approval in *Citizens Utilities Company* v. *Federal Power Commission, supra,* states:

"We fully agree with the Fourth Circuit that one of the purposes of the Water Power Act was to authorize the Commission to license dams in navigable water of the United States in lieu of an act of Congress, and in our opinion one of the purposes of Section 23 was to likewise take care of the case of a proposed structure in a non-navigable tributary of an interstate navigable stream."

See also the recent case of *United States* v. *Grand River Dam Authority,* 363 U.S. 229, 80 S.Ct. 1134, 4 L.Ed.2d 1186, in which the power of flood control of the United States was held to extend to the tributaries of a navigable stream.

The Vermont Public Service Commission, before its decision, thus was faced with a petitioner asking it to condemn lands in connection with a project under the jurisdiction of the Federal Power Commission

but without the petitioner having the license required under the Federal Power Act to operate and maintain the project in furtherance of which the petitioner sought to acquire the land.

Troublesome, in this connection, was the fact that the petition for condemnation had been entered before the Public Service Commission at a time prior to the assumption of jurisdiction over the project by the Federal Power Commission, and its order that a license be obtained. Because, while the Public Service Commission still had the matter under consideration, it was presented with the fact of jurisdiction of the Federal Power Commission over the project, and of the failure of the petitioner to obtain the required license. These facts were noted in its report and order.

The Public Service Commission met the problem head-on by declaring that it retained jurisdiction over the condemnation proceedings even if the Clyde River was navigable, and despite the fact that the petitioner was without the license made mandatory by the order of the Federal Power Commission.

The Public Service Commission cites in support of its position that 16 U.S.C.A. §814 allows a licensee of the Federal Power Commission to seek condemnation in a state court. It also cites the case of *Oakland Club* v. *South Carolina Public Service Commission,* 110 F.2d 84 as further support for authority that a licensee, at its option, may proceed in a state court for condemnation proceedings.

The petitioner, in its brief supporting this ruling of the Public Service Commission, cites to us the cases of *Harris* v. *Central Nebraska Public Power and Irrigation District,* 29 F. Supp. 425 and *Burnett* v. *Central Nebraska Public Power and Irrigation District,* 147 Neb. 458, 23 N.W.2d. 661 as authority that a licensee may use a state court in eminent domain procedure for the condemnation of land. The case of *Superintendent of Public Works* v. *Paonesso,* 14 Misc. 2d 787, a decision of an inferior court of the state of New York, is one upon which the petitioner places considerable reliance. But this case also has to do with a holder of a federal license and its holding is that an agency of the state which accepts a federal license may proceed either under the state's own power of eminent domain, or under the federal license. But the petitioner here is neither an agency of the state, nor is it a federal license holder, although under order to obtain such a license.

■  A private corporation has no right to eminent domain in the absence of a delegation of such power to it from the sovereign by virtue of constitutional or statutory provisions. 29 C.J.S. Eminent Domain p. 12. See *George* v. *Consolidated Lighting Co.,* 87 Vt. 411, 89 Atl. 635, 52 L.R.A., N.S. 850. The statutory provision of 30 V.S.A. §111 (1) grants the right of eminent domain to a private corporation before the Public Service Commission provided that. such corporation has a certificate of public good from the State, or a license from the Federal Power Commission. The certificate of public good is the vehicle by which the State of Vermont delegates the right of eminent domain to a private corporation, just as the license from the Federal Power Commission serves as the delegation of such power on the part of the United States.

■  The issuance of a certificate of public good by the Public Service Commission is a determination that the project for which the certificate is granted is in the public interest of the State of Vermont. *George* v. *Consolidated Lighting Co.,* 87 Vt. 411, 89 A. 635, 52 L.R.A., N. S. 850. The granting of a license for a project by the Federal Power Commission is an affirmative determination by that body that the project so licensed is in the interest of the United States.

■■  In the instant case the facility of the private corporation for which land is sought to be obtained by eminent domain is upon a navigable stream. The Vermont Public Service Commission has no authority to authorize a project or facility upon a navigable stream over which the Federal Power Commission has assumed jurisdiction, and therefore has no jurisdiction to issue a certificate of public good which is the grant of such authority. *In re Bellows Falls Hydro-Electric Corp.,* 114 Vt. 443, 47 A.2d 409. It must therefore follow that it is without jurisdiction to exercise the power of eminent domain by virtue of a certificate of public good, for the power of eminent domain is subordinate to, and dependent upon, the license to maintain the facility for which the land sought is to be condemned.

■  The license to maintain a facility upon a navigable stream must come from the Federal Power Commission. *In re Bellows Falls Hydro-Electric Corp.,* 114 Vt. 443, 448, 47 A.2d 409.

At the time the petitioner filed its petition for condemnation it was under no order to obtain a license to maintain the project for which

it sought the land. It would even appear from the record before us that the project for which the land was sought had been completed and in operation before the petitioner became subject to the federal licensing requirement. But during the pendency of the petition before the Public Service Commission, and prior to its determination of the questions presented to it, there came about a change in both the factual and legal situation presented for its consideration.

The Commission was confronted with the fact that the Clyde River, at the point where the project was situated, had been determined to have an effect on a navigable stream, and was under the jurisdiction of Congress. It was also confronted with the situation that a license must be obtained by its petitioner from the Federal Power Commission to legally maintain its project for which it sought to condemn land, and to confer upon it the right of eminent domain.

■ Despite the fact that its project might have been previously built, under state authority, the order from the Federal Power Commission to obtain a license was required to be obeyed by the petitioner. *Tuscorora Indian Nation* v. *Power Authority of N. Y.*, 257 F.2d 885. *Penn. Water and Power Co.* v. *Federal Power Commission*, 123 F.2d 155.

■ Where a federal agency or administrative body acts in a field permitted by a valid federal statute, its authority is paramount to that of any state board or agency, and where a federal board assumes jurisdiction of a particular case after a state board has taken jurisdiction thereof, the state board's jurisdiction is ousted. *National Labor Relations Board* v. *Eclipse Moulded Products Co.*, 126 F.2d 576; 73 C.J.S. Public Administrative Bodies and Procedure, p. 378.

■ No question would be presented here if the petitioner had seen fit to secure the license it is under order to obtain by the Federal Power Commission. Jurisdiction to condemn the land sought would be vested in the Public Service Commission by 30 V.S.A. §111 (1) as well as by 16 U.S.C.A. §817.

Without the license the Public Service Commission lacks the proof of authorization of the project required by 30 V.S.A. §111 (1) which is necessary for jurisdiction of the eminent domain proceedings brought by the petitioner.

*The judgment order of the Public Service Commission, dated Nov. 10, 1960, purporting to authorize the petitioner, Citizen's Utilities Company, to condemn and to acquire the petitionees' property upon the payment of $95,000.00 is reversed for want of jurisdiction. Let the result be certified to the Public Service Commission.*

**Barney, J.,** concurring. Valid exercise of the power of eminent domain by an eligible private corporation requires full compliance with the statutory prerequisites. Strict construction of the terms of delegation of this power is the rule, since attributes of sovereignty overriding private property rights may not be casually exercised.

30 V.S.A. §111(1) permits the right of eminent domain to be invoked in connection with a power dam only by the holder of a certificate of public good for the project, or by the holder of a license from the Federal Power Commission. This utility admits that it has no federal license. The exercise of eminent domain must then be justified under a certificate of public good. However, the record demonstrates that the utility has no such certificate.

The Public Service Commission's attempt to supply this lack by resort to a sort of "grandfather clause" technique has no support in the statute. Construction of the dam prior to the enactment of the statute requiring a certificate of public good authorized and sustains its presence in the Clyde River under state law. However, this does not overcome the statutory demand that resort to eminent domain powers after the enactment of 30 V.S.A. §111(1) requires either a state certificate or a federal license.

The statute contains no exceptions. The inference is that the legislature wished the "public good" examined before eminent domain is exercised in connection with dams. Neither the public service commission nor the parties have any authority to dispense with the specified prerequisites, however small the proposed exercise of sovereignty. No more can the parties contract away the specific statutory requirements.

The parties have chosen to have recourse to the eminent domain procedure. They are bound to abide by its terms. In this case they have not qualified as authorized users of the power to condemn in either of the modes provided by the statute. The jurisdictional basis for the action of the public service commission is therefore lacking.

Although the case of *In re Bellows Falls Hydro-Elec. Corp.,* 114 Vt. 443, 47 A.2d 409, is indicative of the consequences of the entrance

of the Federal Power Commission into the area through a navigability determination, the question of conflicting jurisdiction is not reached in this view of the matter.

For these reasons I concur with the conclusion of the majority that the jurisdictional basis for the action of the public service commission fails.

**Hulburd, C. J.,** dissenting. Eminent domain, in any real sense, is not involved here. The plaintiff already has a contract right to the land in question. These proceedings are essentially *pro forma* pursuant to the agreement of the parties. Our statute (30 V.S.A. §110) is broad enough to permit condemnation proceedings where a contractual right exists. The corresponding federal statute (16 U.S.C.A. §814) is not.

This is not a proceeding to acquire land for a dam or other construction. The construction has already been done at a time prior to the enactment of any requirement for a certificate of public good. Accordingly, the Public Service Commission has found that the plaintiff possesses all the authorization needed under 30 V.S.A. §111(1). The opinion of the majority does not rest on any error growing out of this finding. As the case stands, it is as if we have a plaintiff, possessing a certificate of public good, which petitions the Public Service Commission for condemnation in connection with a contract as to land on a stream which has not previously been determined to be navigable. The question is whether the Federal Power Commission, by coming on the scene later with its declaration that the Clyde River is navigable, necessarily ousts the Public Service Commission of its jurisdiction. I believe that the state commission having properly entered upon hearing the petition, retained jurisdiction to complete what it had started to do. My reason for so holding would be that there is nothing in the nature of what was sought to be done which could possibly be in opposition to any federal interest. The matter was concerned not with the initiation of a project but with the culmination of a contract under which land is inevitably to be acquired, federal license or no federal license. I am unwilling to assume that proceedings before a state public service commission, with their attendant expense, must automatically come to a dead-end in the circumstances presented by this case. Any "dual system involving the close integration of these powers" cannot be said here to be running into "a futile duplication of two authori-

ties over the same subject matter." *First Iowa Hydro-Electric Coop.* v. *Federal Power Commission,* 328 U.S. 152, 171, 66 S.Ct. 906, 90 L.Ed. 1143. I am unwilling to say that state-federal relations have degenerated to a point where the jurisdictions of the two cannot co-exist in a situation of the sort presented to the commission. At least I am disposed to wait until we have been told so before accepting this conclusion.

In view of the concurring opinion, I cannot leave the question with what has been said.

It is always desirable to keep before us basic concepts. One of these is the legislature's intent which lies behind a given statutory requirement. Here we are concerned with a certificate of public good. It seems clear that what the legislature intended was this: private property ought not to be taken from a man in the name of the sovereign, *i.e.,* the public, unless the public good is going to be served. To take a man's property against his will, in the name of the public, where no public good demands it, would be the worst kind of tyranny. It follows that where the landowner, by his own contract has freely bound himself to convey the land in question, all reason for establishing public good has disappeared. Here we have a dam with its appendage, that is, the penstock leading from it, which have been constructed long before the "public good statute" was enacted. The concurring opinion concedes that the existence of the dam and penstock is "secure;" in other words, it is as if they were there by virtue of a certificate of public good, but that this security does not extend to the land which underlies them, even though the utility, long before the public good statute, acquired, by contract, a right to own that land. I am unwilling to give the defendant-landowners the benefit and protection of a position which has been bargained away by them. One asks: What is there to hold a public good inquiry on? The dam and penstock are there secure; conveyance of the land has been promised by contract. To say that the public service commission sought to proceed on "a sort of 'grandfather clause' technique" is not sufficiently comprehensive. Having taken judicial notice of its records showing a long course of recognition of the utility and its operations—something which is not at hand for this Court—the Public Service Commission's position may be supported on the broad ground that in view of the contract which antedated the public good statute, it would be a meaningless insistence on a useless act to make a formal public good certificate a prerequisite

for the proceeding involved in this case. The legislative objective has already been satisfied.