Charles T. PROUTY, Genevieve Prouty Gage, John A. Prouty, Elsinor Prouty Mallory, and The Third National Bank and Trust Company, Plaintiffs-Appellees,

v.

CITIZENS UTILITIES COMPANY, Defendant-Appellant.

No. 310, Docket 27970.

United States Court of Appeals Second Circuit.

Argued April 29, 1963.

Decided June 24, 1963.

Milton S. Gould, New York City (Gallop, Climenko & Gould, New York City, and Clifton G. Parker, Morrisville, Vt., on the brief), for defendant-appellant.

Arthur L. Graves, St. Johnsbury, Vt., for appellees John A. Prouty and Elsinor Prouty Mallory.

Edwin W. Lawrence, Rutland, Vt., for appellees Charles T. Prouty, Genevieve Prouty Gage, and the Third Nat. Bank & Trust Co.

Kenneth P. Akey, Burlington, Vt., for appellee Elsinor Prouty Mallory.

Before CLARK, SMITH and HAYS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

The four plaintiffs are the heirs of Abbie D. Prouty who executed a lease of certain property to the Newport Electric Light Company, predecessor of the present defendant, in 1930. The leasehold was land on both sides of the Clyde River, a stream in northern Vermont. Most of the fall of that river, from its source to mouth, is concentrated on plaintiffs' property. At present, the Citizens Utilities Company has erected and is maintaining penstocks (a type of conduit) bringing water from a dam upstream to generating facilities below.

There is apparently no alternate route for the penstocks and they are a necessary part of defendant's hydroelectric development. The lease was for a twenty-five year term and provided a monthly rental and an option to purchase before October 1, 1935 for $150,000. In the event that the option was not exercised, as it was not, the lessee was required by the terms of the lease to purchase the property within six months after its expiration either at a mutually agreed price, or for $300,000, or by instituting proceedings to acquire the property through condemnation "before the tribunal then having jurisdiction of such proceedings."

Apparently believing that the Vermont Public Service Commission was the proper body, defendant instituted condemnation proceedings before it to acquire the property on March 27, 1956. Plaintiffs countered by bringing this action on May 11, 1956—the six-month period had meanwhile expired on March 30, 1956. Plaintiffs claimed that the sole body having "jurisdiction" was the Federal Power Commission, arguing that the Clyde was a navigable stream under exclusive federal regulation. As Citizens Utilities had never sought the federal license required by law (16 U.S.C. § 817) for its operations, the federal statutory provisions permitting a licensee to institute condemnation proceedings before an appropriate state tribunal (16 U.S.C. § 814) and the implementing Vermont legislation (30 Vt.Stats.Ann. §§ 109–115) were said to be inapplicable. The complaint asked injunction of further proceedings before the Vermont Public Service Commission and specific performance of the contract at the stated price of $300,000, now the only available alternative. Jurisdiction was based on diversity of citizenship: Citizens Utilties was a Delaware corporation and plaintiffs were citizens of other states.

The District Court held that the Clyde River was indeed navigable (pursuant to the verdict of an advisory jury), and that federal legislation had superseded state jurisdiction over navigable waters.

The Court refused to grant the injunction, but concluded the defendant should have applied to the Federal Power Commission for a license to acquire the property in order to place its controversy before a tribunal having jurisdiction, and that the plaintiffs were therefore entitled to specific performance of the agreement at the $300,000 sale price. Prouty v. Citizens Utilities Co., 150 F. Supp. 892 (D.Vt.1957). On appeal, this Court reversed, holding that the grant of specific performance was effective interference with the prior state proceeding before the Vermont Public Service Commission, tantamount to the injunction of state proceedings forbidden by 28 U.S.C. § 2283. The final judgment, however, was that the complaint not be dismissed but instead held pending, so that in the event that the state determined that it had no jurisdiction the plaintiffs would be free to prosecute further federal proceedings to enforce their rights. 257 F.2d 692 (2 Cir.), cert. denied 358 U.S. 867, 79 S.Ct. 98, 3 L.Ed.2d 99 (1958).

On February 16, 1959, the Federal Power Commission ruled that the Clyde River was navigable and directed the defendant to apply for a license for its future operations. 27 P.U.R.3d 183 (1959). No mention was made of the condemnation proceedings then still pending before the Vermont Public Service Commission. On review in this Court, the order was affirmed on the ground that the last mile of the Clyde was navigable, and as defendant's activities along the upper reaches of the river affected the navigable portion, they were also within the regulatory jurisdiction of the Federal Power Commission. Citizens Utilities Co. v. Federal Power Comm'n, 279 F.2d 1 (2 Cir.), cert. denied 364 U.S. 893, 81 S.Ct. 224, 5 L.Ed.2d 188 (1960). This, however, did not prevent the Vermont Public Service Commission from ruling later in 1960 that it had jurisdiction over the condemnation proceedings (pending since 1956) and awarding $95,000 compensation for the property. (It should be noted that expert valuations of the property ranged

from $2,000 to about $215,000. Only the plaintiffs themselves testified that it was worth $300,000.) But the order granting compensation was reversed "for want of jurisdiction" by the Supreme Court of Vermont. Citizens Utilities Co. v. Prouty, 122 Vt. 443, 176 A.2d 751 (1961), cert. denied 369 U.S. 838, 82 S.Ct. 867, 7 L.Ed.2d 842 (1962).

The litigants returned to the District Court for the District of Vermont where it was again held on the 1956 complaint that the plaintiffs are entitled to specific performance of the contract at the set price of $300,000. The Court based its conclusion on the holding of the Supreme Court of Vermont, stating that the finding of present lack of jurisdiction necessarily implied lack of jurisdiction at the outset, and that therefore the defendant never properly complied with the condemnation alternative in the lease. See 209 F.Supp. 26 (D.Vt.1962). Though our rationale differs somewhat from this, we agree with the result and affirm the judgment.

As a matter of law, it is not necessarily true that a present lack of jurisdiction requires a finding that jurisdiction has always been absent. There have been examples of ouster of originally valid jurisdiction through supervening changes in facts or law. See, e. g., Ex Parte McCardle, 7 Wall. (74 U.S.) 506, 19 L.Ed. 264 (1869). Apparently realizing this, the parties have directed their entire arguments to the interpretation of the language of the Supreme Court of Vermont, attempting to convince us either that that Court did or did not decide that proper initial jurisdiction in the Vermont Public Service Commission had been "ousted" by the later action of the Federal Power Commission. Their difficulties stem not from a lack of clarity in that decision but from the fact that the Supreme Court of Vermont did not have the issue of initial jurisdiction before it and so, quite properly, did not decide it. All that the Supreme Court of Vermont was called upon to decide was whether, once the Federal Power Commission had required Citizens Utilities

to secure a license, the Vermont Public Service Commission could still act to condemn property on behalf of Citizens Utilities. The original state of affairs in 1956 therefore remains to be determined by this Court.

■ As this is a diversity action, we look first to Vermont law to decide the question whether the Vermont Public Service Commission had jurisdiction in 1956 of the condemnation proceedings instituted by Citizens Utilities. We find controlling authority in In re Bellows Falls Hydro-Electric Corp., 114 Vt. 443, 47 A.2d 409 (1946). In this action, the Supreme Court of Vermont dismissed on its own motion for lack of jurisdiction an appeal from an order of the Vermont Public Service Commission which had purported to regulate hydroelectric development on a navigable stream. The Court held that federal legislation had pre-empted the field and that the Commission had no jurisdiction to act, quoting extensively from First Iowa Hydro-Electric Co-op. v. Federal Power Commission, 328 U.S. 152, 66 S.Ct. 906, 90 L. Ed. 1143 (1946). The case was cited with approval in Citizens Utilities Co. v. Prouty, supra, and we have no reason to suppose that it is not still the law of Vermont. It thus seems clear that Vermont would hold that without a license from the Federal Power Commission to the applicant, the Public Service Commission had no jurisdiction to condemn land in connection with a project involving navigable waters, even in the absence of any federal action. In light of this holding, we need not consider the problem of conflict with federal law that would be presented by a contrary resolution of the jurisdictional question. See First Iowa Hydro-Electric Corp. v. Federal Power Commission, supra.

■ Giving the terms of the contract their plain meaning, we find this determination dispositive of the case. To take advantage of the condemnation alternative, defendant was required to bring proceedings before a tribunal that would have power to hand down a final adjudication of the value of the prop-

erty and to decree its sale. This is the meaning of "jurisdiction" as the parties used it. Defendant did not do this. The evident purpose of the six months limitation and the three stated alternatives was to ensure that the plaintiffs could have a speedy sale at the termination of the lease. Defendant's actions thwarted this purpose. The plaintiffs were easily enough able to ascertain that the Vermont Public Service Commission was not the proper body before which to bring the condemnation proceedings, as witnessed by their institution of this action on what has proven to be the correct theory of the law only six weeks later. The decision of the Supreme Court of Vermont in In re Bellows Falls Hydro-Electric Corp., supra, had been on the books for some years. Vermont law refers to the necessity for a federal license or a state certificate—neither of which defendant had. 30 Vt.Stats.Ann. §§ 111 (1), 115. Citizens Utilities apparently thought that it was worth the risk of having to pay $300,000 for the property to attempt to avoid having to secure the license required of it by federal law, with the attendant federal regulation. It is hardly reasonable to suppose that Citizens Utilities is surprised by the outcome of this litigation and that it did not realize in 1956 that it could have avoided the possibility of a sale at $300,000 at least by instituting parallel proceedings with the Federal Power Commission. The mistaken gamble is tantamount to a deliberate rejection of the condemnation alternative. The agreed terms of the contract gave the burden of making the choice of alternatives to the defendants. Plaintiffs are entitled to the benefits of this choice, for whatever reason it was made.

■ Defendant also assigns as error the amendment of the judgment to permit tender of separate deeds by the four plaintiffs and separate payment to them, as well as crediting defendant with amounts paid to plaintiff Elsinor Prouty Mallory, "under an alleged contract." The purpose of the amendment was to permit the sale to be completed as far as possible despite a settlement agreement apparently made between defendant and Elsinor Prouty Mallory which the latter is now seeking to avoid through litigation presently pending. Defendant is concerned that this amendment will somehow adjudicate the invalidity of its settlement agreement and earnestly importuned us to set the amendment aside. We do not see how this is so; nor do we understand Judge Gibson to have intended any such result. The agreement and negotiations leading to it were not before him and they are not part of the record on appeal. More to allay the fears of the defendant than to correct error we order that the amended judgment be modified by adding the following sentence at the end: This judgment does not affect the validity or invalidity of any settlement made between defendant and plaintiff Elsinor Prouty Mallory.

So modified, the judgment is affirmed.

HAYS, Circuit Judge (dissenting).

In the sense in which the words of the contract should be read the Vermont Public Service Commission had jurisdiction over the condemnation proceeding brought by the defendant Company. The Commission was the appropriate body before which to bring such a proceeding, and it had the power to condemn the property. This is surely all that the parties could have meant by their agreement.

By reading the contract with even greater strictness than one would expect to find employed in the construction of the most technical of statutes the majority holds that, since the Vermont Commission could not proceed until the Company secured a license from the Federal Power Commission, the Vermont Commission did not have jurisdiction. For all that appears the Company in entire good faith believed that it was not required to have such a license. By the present decision its mistake as to the necessity of having a license is made the excuse for giving plaintiffs a windfall in

**38**

the form of receiving $300,000 for property which was found in the abortive condemnation proceedings to be worth $96,000.

I must respectfully dissent.